BETHUNE *vs.* HUGHES, Marshal, &c.

A grant to *establish* and *keep up* a market, does not of itself imply the power to exclude all persons from selling elsewhere marketable articles within market hours.

Habeas Corpus, in Muscogee Superior Court.    Decision by Judge Worrill, at May Term, 1859.

This was an application by plaintiff in error, to be discharged from an alleged illegal imprisonment to which he was subjected, under, and by virtue of, a warrant issued by the city council of Columbus, for a violation of one of the market ordinances of said city.

At the hearing before Judge Worrill, in addition to the return of the marshal, it appeared that the following were the market ordinances, for the violation of which, Bethune was fined and arrested, viz:

" That no person shall contract for or vend any articles " or provisions usually vended in market before the mar- " ket opens, nor at any place within the limits of this city, " during market hours, except at the market house.   Any " person violating this provision, either as vendor or sell- " er, shall pay a fine not exceeding twenty dollars."

" That nothing, whatever, either meats, fruits, or any " vegetables, shall be delivered at any place save the " market house, during market hours, to-wit:  till 12 " o'clock M.   And the marshal and police be instructed " to arrest all parties who do it; and that, upon convic- " tion, such parties shall pay a fine of not less than five " dollars nor more than ten dollars."

The following is the section of the act, passed in December, 1858, authorizing the establishment of a market in the city of Columbus:

Bethune vs. Hughes, Marshal, &c.

"SEC. III. *Be it further enacted,* That the mayor and "council of the city of Columbus shall have the power to "establish and keep up one or more public markets in "said city, for the sale of poultry, eggs, butter, milk, fresh "meats, and vegetables of any kind, and all other such "articles as are usually vended at a city public market; "and shall govern the same by such rules and regula- "tions as said mayor and council shall deem necessary "and proper; and may prescribe and enforce .fines and "penalties for a violation of market laws and regulations: "*Provided, however,* That said mayor and council may "grant private licenses for the sale of marketable articles, "or any of them, at a place or places in said city, other "than the public market, upon such terms, regulations "and control as the said mayor and council may adopt."

After argument, Judge Worrill refused to discharge petitioner, who, thereupon, excepted, and assigns error.

JAMES N. BETHUNE, in *propria persona,* and B. Y. MARTIN, for plaintiff in error.

JOHN PEABODY, *contra.*

*By the Court.*—LUMPKIN, J., delivering the opinion.

The only question which we propose to consider and decide is: did the mayor and council of the city of Columbus have the power to pass an ordinance making it penal, to sell such articles as are usually vended at a public city market, at any other place (within certain hours) than at the market?

By the 3rd section of the act of 1858, it is declared that "the mayor and council of the city of Columbus shall "have the power to establish and keep up one or more "public markets in said city for the sale of poultry, eggs, "butter, milk, fresh meats and vegetables of any kind; "and all other such articles as are usually vended at the

36

"city public market, and shall govern the same as such "mayor and council shall deem necessary and proper; "and may prescribe and enforce fines and penalties for a "violation of market laws and regulations: *Provided, how-* "*ever*, That said mayor and council may grant private li- "censes for the sale of marketable articles, or any of "them, at a place or places in said city, other than the "public market upon such terms, regulations and control "as the said mayor and council may adopt."—(Pamphlet Acts of 1858, page 128.)

It will be seen that the act contains only a broad grant "to *establish* and *keep up* a market" or markets at one or more public places in the city. It confers no power to prohibibit the sale of marketable articles elsewhere than at the market place.

Now it is laid down expressly in Grant on Corporations (top page 185, marginal 176,) and in *Mayor of Macelsfield vs. Chapman*, (12 M. & W., 18,) that the grant of a market does not of itself imply the power to exclude all persons from selling elsewhere marketable articles within market hours. And we find no power contravening this. Mr. Grant adds, that "it may be taken for law that the King himself could not, at the present day, convey the right to enforce so great a restriction upon trade."—(*ibid.*) Perhaps Parliament, in its omnipotence, might. Whether our Republican Legislature has this power, it is unnecessary to decide. It is enough to know that they have not undertaken to exercise it in the present case.

And they will hesitate long before they will knowingly compel decent poor women and boys to attend at the market place, to mingle with the rabble that often assemble there in order to sell a few pounds of butter, or a few vegetables—before they will coerce poor men who bring in poultry and eggs on their load of wood to wait for hours before they can return to their labors, remaining around the market exposed to the weather; or, indeed, before

Bethune vs. Hughes, marshal, &c.

they will restrict any person, in this land of liberty, from selling his cotton, corn, wheat, beef, pork, chickens, or anything else, when he pleases, where he pleases, and to whomsoever he pleases.

After the judgment of the court was pronounced in this case, my attention was called to the *proviso* in the statute, authorizing the mayor and council to grant private licenses for the sale of marketable articles *at places* in said city other than the.public market. It was supposed that the power was deducible by necessary implication from those words. This clause did not escape observation. It does not, it will be presumed, authorize a license to sell *generally* over the city, but at a particular place or places, other .than at the market house; and, therefore, does not, by implication, authorise a *general prohibition*, such as that contained in the ordinance. A power like that under consideration, should not depend upon doubtful implication. One which it is exceedingly questionable whether the Legislature itself can exercise or delegate to others.

Again, it is insisted, that as the power is given not only to *establish* but to *keep up* a market; and as this cannot be done but by prohibiting sales elsewhere, the power to do this is necessarily included in the .grant, as indispensable to its exercise. Even this result would not justify the assumption of power not delegated. The most that could be said would be that the grant would prove unavailable. But it is not true in point of fact. And here lies the fundamental error of this whole doctrine. A market may be established in such a way as to induce most persons who vend articles to go there for that purpose. It possesses inherent advantages over other places. Property sold in market is attended with certain incidents which do not attach to private sales. Besides, stalls and other conveniences might be furnished without expense to the producer. Even bounties and premiums may be awarded,

so as to encourage both the quantity and good quality of the articles vended at the market. Individuals are compelled to hold out inducements to secure trade; why should not communities be required to do the same. Private persons coax trade to their doors; whereas municipal corporations force it to their market places by penal enactments, levying a tax at the same time upon the producer, to supply their treasury with revenue. Let the burden fall, where it ought to fall, upon the consumer. In short, let any thing and every thing be done, rather than restrict commerce, rather than force and imprison trades-people, to coerce them to submit to all kinds of discomfort and inconvenience; not to say loss, to gratify the selfishness, or avarice, or convenience of a favored few; to be taxed to support the pomp and parade of a few municipal lords.

The best feeling formerly subsisted in our country towns between the consumer and producer; they were mutually respectful and friendly; the country people frequently contracting with the citizen consumer for weekly or even winter or summer, or yearly supplies of certain edibles. Weights and measures were satisfactory, and prices remunerating. The wives, daughters and boys of the small farmer were treated with the civility due to their sex and condition. But how changed under these anti-free-trade regulations. No wonder that irritation has taken the place of good feeling!

A convention of the people, called by the people, I would most respectfully suggest, is imperiously needed to impose additional restraints upon the powers of the Legislature, now more unlimited, in the opinion of some of our ablest jurists, than those of the British Parliament. Our honest, simple-hearted, ancestors supposed that when they had guaranteed trial by jury, freedom of the press and of religious worship, no more was needed. Our State Constitution contains fewer safe-guards, perhaps, than any

other in the Union. The new States are far ahead of this, and most of the old States, in this respect. But times have changed. And well as our system has worked in days past, a Bill of Rights is *demanded*. The great fundamental principles of human rights should be put beyond the reach and control even of constitutional change by the Legislature. Let the sovereign people convene, and say to the law-making power: thus far shalt thou go and no further.

Excessive legislation—the vice of all free governments—is, perhaps, the fault of the State. Through haste, inadvertence, and other causes, case legislation and class legislation is to be found frequently upon our statute book. Something should be done to arrest this evil. The dearest rights of the people are jeopardized.

A peaceable citizen, who discharges punctually all his public duties, and respects scrupulously the rights of others, should be left free and untrammeled as the air he breathes, in the pursuit of his business and happiness. Fetters are equally galling, whether imposed by one man or by a community; and I am not ashamed to confess that the best sympathies of my heart are, and always will be, interested for one who is, or may be, incarcerated, because, in the proud consciousness of a freeman, he claims the right to offer for sale, at any hour of the day, on the highway, or in the streets, as interest or inclination may prompt him, any commodity he may possess, the traffic in which is not forbidden by the laws of the land.

Judgment reversed.