## George H. Gale v. The Village of Kalamazoo.

*Pleading : What a sufficient averment of execution of a contract on behalf of a village.*
On demurrer to a declaration upon a contract, the averment in the declaration, that "the said plaintiff and the said defendant entered into their certain contract in writing, which said contract, sealed by the said plaintiff, and by the said defendant, by its agents and servants, the president and trustees of the village of Kalamazoo, executing the same, and having full power and authority so to do, and to bind the defendant thereby, is in the words and figures following," [setting it forth *verbatim*] is sufficient to embrace whatever was essential to confer upon the president and trustees, the proper authority to make the contract on behalf of the village.

*Agency : How far village bound by contract executed by its officers.* Where the proper village authorities, having power to make contracts on its behalf, assume officially to enter into an agreement which only the corporation could properly make, and, in so doing, declare themselves and their successors in office bound by its conditions, if the contract be one in its essentials, which the village had the power to enter into, the corporation will be bound by it.

*Power of village to provide a market-house.* A village, possessing under its charter the usual powers, has the right to provide itself with the proper building for a public market, either by renting, buying or contracting for the building of the same; and its contract for that purpose is binding upon it to the same extent as would be the contract of an individual in a matter pertaining to his own private business.

*Village authorities cannot abdicate their legislative powers, nor create a monopoly.* Where village authorities contract, in consideration that a person shall build a market-house, and place it under their control for ten years, to rent the stalls for such rent as shall be fixed upon by them and such person, and pay over the rents to such person ; to have the market-house attended to and supervised by a competent manager or clerk of their own appointment, whose duty it shall be, among other things, to require the observance of all the ordinances and by-laws of the village authorities relating thereto and to the vending of market articles ; to have no other public market-house in said village during said ten years, provided the said market-house should prove large enough to accommodate the public, and to confine the sale of market articles within the corporate limits during market hours to said market-house, or to certain specified limits in its vicinity,—the corporation will not be bound by such contract.

Such contract is open to the objection that it tends to divest the corporation of a portion of its legislative authority, and to create a monopoly in favor of such contractor.

The fact that a village ordinance provides for the leasing of the stalls by auction, in the absence of any provision in the contract which binds the contractor to assent to the rent offered at auction, or precludes him from arbitrary discriminations among bidders, does not divest said contract of its objectionable tendency to create a monopoly.

*Legislative discretion of municipal authorities cannot be bargained away.* Where the only breach of such contract complained of is a refusal on the part of the corporation to exercise the corporate legislative powers in taking charge of the market, and renting its stalls, and an actual exercise of such powers by a repeal of the ordinance relative to markets, the village cannot be held liable. Such action on the part of the village authorities, was but the exercise of a legislative discretion vested by law exclusively in them. upon the continuous and

unlimited possession and exercise of which no restraints or limitations can be imposed by themselves, or by any other authority than the legislative power of the state.

*Heard July 6.   Decided October 3.*

Error to Kalamazoo Circuit.

This was an action brought by George H. Gale against the village of Kalamazoo, for a breach of contract in refusing to exercise the legislative powers of the village to carry out an agreement, of which the following is a copy, viz:

"George H. Gale, of the village and county of Kalamazoo and state of Michigan, hereby stipulates, agrees and obligates himself, his heirs and legal representatives, to the president and trustees of the village of Kalamazoo, in said county and state, to erect, build and finish on village lots number four and five, on the corner of Burdick and Eleanor streets, in said village, according to the plan herewith attached and marked 'A,' a commodious market house, to be denominated the 'Kalamazoo Public Market,' and to be used for the purpose of vending meat, fish, poultry, game, fruit, vegetables, eggs and butter; said market-house to be so arranged with convenient stalls and fixtures that the same may be used at all seasons of the year, and with convenient approaches to the same for wagons, carts, drays and other vehicles; said market-house to be completed, and ready for occupancy and use by the first day of January, A. D. 1868, and to cost, including the ground to be occupied for the same, a sum not less than eight thousand dollars.

"Immediately after said market-house is completed and ready for its occupants, the said George H. Gale hereby stipulates and agrees to place the same in the care and under the control of the president and trustees of the village of Kalamazoo and their successors in office, for the term of ten years, who shall control and rent the stalls in said market-house from year to year, or such other time

28 MICH.—44.

as may be agreed upon, and for such sums of money and to such persons as may be agreed upon by said president and trustees and said George H. Gale or his legal representatives, and on receipt of the rent it shall be paid to said George H. Gale, his heirs or assigns, quarter-annually, and as the same may be received from the occupants of the stalls in said market-house.

"And it is further agreed between said parties, that the said George H. Gale, his heirs or legal representatives, shall keep said market-house and its approaches in good repair at his own cost, charge and expense, during the continuance of this contract; and it is further agreed between said parties that after the expiration of said term of ten years, or before, by consent of the parties hereto, this contract may be continued in force for the same or any other definite period of time; and when this contract shall be ended and of no further binding force between said parties, the said president and trustees, and their successors in office hereby reserve to themselves the right at all times in the future thereafter to go upon said premises and inspect the same, and control the same so far as it may concern the cleanliness of said market-house as affecting the health of said village.

"In consideration of the foregoing stipulation and agreement on the part of the said George H. Gale, the said president and trustees of the village of Kalamazoo hereby bind and obligate themselves and their successors in office, to have said market-house attended to, and supervised, by a competent manager or clerk, to be by them appointed, whose business, among other duties, it shall be to require the observance of all ordinances or by-laws adopted by said president and trustees, for the purpose of properly regulating said market-house and the vending of meats, fish, poul-

try, game, fruit, vegetables, eggs and butter, within the corporate limits of said village; and all the expenses of said manager or clerk shall be paid by the said Gale.

"The said president and trustees do further agree that during the continuance of this contract there shall be no other public market-house in said village, provided said market-house shall prove large enough to accommodate the public for the purposes aforesaid; and the said president and trustees do further agree that the sale of all the articles above specified within the corporate limits of said village shall be confined to said market-house, or on the ground specified in section 11 of the by-law relating to public markets, during market hours.

"The said president and trustees, for themselves and their successors in office, do further agree that at the expiration of this contract they will surrender possession of said market-house to said George H. Gale, his heirs, assigns or legal representatives.

"And it is further agreed that this contract shall not be binding upon said president and trustees of said village, until said market-house is fully completed and accepted by said president and trustees, and when so accepted it is also agreed that none of its provisions are to be construed so as to create any liability to the said George H. Gale, his heirs or assigns, on the part of said president and trustees of the village of Kalamazoo or their successors in office, for any damage that may at any time occur to said public market-house by fire or other elements."

This contract was executed by the plaintiff personally, and on behalf of the village by the president and trustees of the village. The averments of the declaration are sufficiently stated in the opinion. The defendant demurred to the declaration, alleging the following causes of demurrer, viz:
1. That it appears in and by said declaration that the

contract therein set out was not executed by said defendant, but by certain individuals, whose names are thereto attached. 2. That said defendant had no legal power to execute such a contract as is therein set forth. 3. That it does not appear, in and by said declaration, that said contract therein set forth was ever authorized, or entered into, or executed by the president and trustees of said village of Kalamazoo, or that said president and trustees ever accepted said market-house, or assumed the control thereof. 4. That it does not appear, in, and by, said declaration, that said by-laws therein set forth, or any of them, were of any valid or binding force. 5. That said by-laws, even if valid, would not give the plaintiff any grounds for a private or civil action against the defendant.

This demurrer was sustained, and judgment was rendered for the defendant. The plaintiff brings the cause to this court by writ of error.

*Edwards & Sherwood, H. F. Severens* and *D. Darwin Hughes,* for plaintiff in error.

*J. W. Breese, C. I. Walker, G. V. N. Lothrop* and *Dwight May,* for defendant in error.

COOLEY, J.

The objection made by the defendant, that the contract sued upon appears to be the contract of the president and trustees of the village of Kalamazoo, as individuals, instead of the contract of the village itself, does not appear to us well founded. The averment in the declaration, is that " the said plaintiff and the said defendant entered into their certain contract or agreement in writing, which said contract or agreement, sealed by the said plaintiff, and by the said defendant, by its agents and servants, the president and trustees of the village of Kalamazoo, executing the

same and having full power and authority so to do, and to bind the defendant thereby, is in the words and figures," which are given in full. This averment is sufficient to embrace whatever was essential to confer upon the president and trustees the proper authority to make the contract on behalf of the village; and it must be taken to be the contract of the corporation, unless the instrument as thus set out shows upon its face that it is the contract of the officers and not of the corporation. We think it entirely clear, from the terms employed, that it was intended to be the contract of the village; and although the words used are not the most suitable for expressing in clear legal language the intent to bind the corporation, yet when the proper village authorities, having power to make contracts on its behalf, assume officially to enter into an engagement which only the corporation could properly make, and, in so doing, declare themselves and their successors in office bound by its conditions, the purpose by this language to bind the corporation is too evident to be brought in question. We think there is no want of due formality here, if the contract, in its essentials, is one the village had the power to enter into.

. The question, whether by. this instrument the corporation has not assumed obligations not warranted by the law, is one of considerable importance, and possibly of some difficulty. It is argued on the one hand that the village authorities have undertaken, by this instrument, to divest the corporation of some portion of its legislative authority, and to create a monopoly in its markets for the benefit of the plaintiff, while on the other it is insisted that there is nothing unusual in the contract, and that in making it the village has not gone beyond the ordinary exercise of municipal authority in the regulation and control of village markets. These diverse views have been presented with no ordinary

ability and force, and we find it necessary to examine somewhat in detail, the various provisions of the contract from which such different conclusions are drawn.

The plaintiff, it appears, undertook to build a markethouse, to be known as the Kalamazoo Public Market, and to be placed under the control of the village authorities for ten years. The authorities were to rent the stalls from year to year, or for such other times as might be agreed upon, for such rents as they and the plaintiff should fix upon, and to pay over the rents to the plaintiff. In consideration of the building of the market-house, the village undertook to have it attended to and supervised by a competent manager or clerk of its own appointment, whose duty, among others, it should be, to require the observance of all ordinances or by-laws adopted by the president and trustees of the village, for the purpose of properly regulating the market-house, and the vending of meats, fish, poultry, game, fruit, vegetables, eggs and butter, within the corporate limits of the village. The village also undertook that during the continuance of the contract, there should be no other public market-house in said village, provided the market-house to be built by the plaintiff should prove large enough to accommodate the public for the purposes aforesaid, and that the sale of all the articles above specified within the corporate limits of said village, should, during market hours, be confined to said market-house, or on the ground specified in a village by-law relating to public markets, referred to in said contract, and which was passed at, or about, the date of the contract with a view to giving it effect.

These are the main provisions of the contract, which the plaintiff avers has been fully performed on his part. The general purpose was to induce a private citizen to erect a market-house for the village, the authorities under-

taking, in order that he might be compensated therefor, to confine the marketing of the citizens, during market hours, to the building and its vicinity; to appoint a proper officer for the enforcement of all by-laws and ordinances relative to the market and to the vending of market articles, and to control and rent the stalls for the benefit of the plaintiff.

There can be no doubt whatever that such a municipal corporation, if possessing under its charter the usual powers, would have the right to provide itself with the proper building for a public market, either by renting, buying or contracting for the building of the same, and that its contract for that purpose would be binding upon it to the same extent as would be the contract of an individual in a matter pertaining to his own private business. Indeed, in providing its members with this convenience, this public corporation would be acting in no different capacity than would any private corporation in providing any convenience for the discharge of its corporate functions, and there could be no difference in the legal rules which would be applicable. The legislative power of the village might be called into exercise, in order to the giving of the proper authority for the contract, but in entering into the contract, the village must be regarded in the light merely of an individual proprietor. And had the village, in this instance, contracted to pay the plaintiff for his market-building, when constructed, or for the rent thereof, the questions before us could not have arisen. Such a contract would not in any manner have hampered the legislative authority of the village; for, though irrevocable, it would not have precluded the authorities from abandoning the use of the building for market purposes at any time, or from establishing other markets, if, in their opinion, the convenience of the public would be the better subserved thereby.

The contract in question, however, is not only entered into in pursuance of an exercise of legislative authority on the part of the village, but it undertakes to control that authority in several important particulars:

1. It requires the appointment of a competent manager or clerk to attend to, and supervise, the market-house, and to require the observance of the ordinances and by-laws relative to the marketing within the village. For this purpose legislative action would have been essential, and must consequently have been within the contemplation of the parties when the contract was made.

2. It binds the authorities not to permit any other market-house, provided the one erected by the plaintiff should prove large enough to accommodate the public; and

3. It undertakes that the authorities shall restrain the ordinary marketing within defined bounds.

In each of these particulars this contract differs widely from one which should merely put the city in possession of a market-house to be controlled and disposed of according as subsequent circumstances should appear to render desirable. Suppose—in order to illustrate the difference—that the village, after a year's experiment, should be satisfied that market limits and a market-house were not desirable; that it was better that every person be allowed to sell where he could find customers, and to buy where he could procure what he needed, and that a manager or clerk of the market was unnecessary; in the one case the village might have upon its hands a building for which it had no need, but in the other, if this contract possesses any legal validity, it would have obligated itself for a term of years to continue a system which experience had demonstrated was not for the public good. Or, suppose the subsequent growth of the village should demonstrate that the location chosen for the market-house was not the proper and suitable one, though the market itself was

needful; in the one case, by the proper exercise of legislative authority, a new site might be chosen, but in the other, the village would not only have bound itself to continue a useless market, but would have precluded itself from the establishment of one which would accommodate the public needs.

If a municipal corporation can preclude itself in this manner from establishing markets wherever they may be thought desirable, or from abolishing them when found undesirable, it must have the right also to agree that it will not open streets, or grade or pave such as are opened, or introduce water for the supply of its citizens, except from some specified source, or buy fire-engines of any other than some stipulated kind, or contract for any public work except with persons named; and if it might do these things it is easy to perceive that it might not be long before the incorporation itself, instead of being a convenience to its citizens, would have been used in various ways to compel them to submit to innumerable inconveniences, and would itself constitute a public nuisance of the most serious and troublesome description. Individual citizens, looking only to the furtherance of their private interests, might, in various directions, engage it in permanent contracts, which, while ostensibly for the public benefit, should impose obligations precluding further improvements and depriving the town prospectively of those advantages and conveniences which the municipality was created to supply, and without which it is worthless. For if the village might bind itself to one market-house, for ten years, it might do so for all time to come; and if it might agree that improvements and conveniences of one class might be confined by contract to one quarter of the town, a reckless or improvident board might agree with a greedy or unscrupulous proprietor of town lots, that all improvements of every description

28 MICH.—45.

should be so located or made as to conduce to his benefit, irrespective of the general good.

It will not do to say of such a contract that it must be assumed to have been reasonable in view of the actual condition and wants of the village, and of its probable growth and future needs. What would be thought proper for the village this year might be found worse than useless the next, and no official prescience could determine with absolute or even tolerable certainty what changes a few years might work. Indeed it is impossible to predicate reasonableness of any contract by which the governing authority abdicates any of its legislative powers, and precludes itself from meeting in the proper way the emergencies that may arise. Those powers are conferred in order to be exercised again and again, as may be found needful or politic, and those who hold them in trust to-day are vested with no discretion to circumscribe their limits or diminish their efficiency, but must transmit them unimpaired to their successors. This is one of the fundamental maxims of government, and it is impossible that free government with restrictions for the protection of individual or municipal rights could long exist without its recognition.

But there is at least one feature of the contract which would invalidate it, even if we were to be confined to a consideration of existing facts, and were at liberty to assume that the circumstances bearing upon its reasonableness would continue unchanged for the whole period of ten years. Not only was the marketing to be confined to one locality, but the plaintiff was to have an unlimited right to control the occupation of the market-house through the power given him to determine the rents to be paid by lessees. This vested in him a practical monopoly of the public market; and though it is possible that he might exercise

his rights impartially as between dealers, and with an eye to the public good, we cannot lose sight of the fact so well stated in the old case of monopolies, that "the end of all these monopolies is for the private gain" of those who hold them.—*Darcy v. Allein, 11 Rep., 84; Broom, Const., L., 238.* They are founded in destruction of trade, and cannot be tolerated for a moment.

In the brief for the plaintiff, it is sought to meet this difficulty by the provision in the village ordinance, that the leasing of stalls should be by auction; but we do not find in the contract any thing which binds the plaintiff to assent to the rent offered at auction, or which would preclude him from arbitrary discriminations among bidders. Nothing appears to us plainer than that the plaintiff, in fixing upon the rents that were to be paid for his benefit, was to have a substantial control, and this may fairly be assumed to have constituted an important inducement to him in entering into the contract.

It is also argued on behalf of the plaintiff, that the village cannot be at liberty to dispute the validity of the contract until it is found actually to impede the proper exercise of municipal powers, and that even then it must give way only so far as it shall be found to constitute an obstruction; but the declaration shows that the breach of contract complained of is a refusal to exercise the corporate legislative powers in taking charge of the market and renting its stalls, and an actual exercise of such powers by a repeal of the ordinance relative to markets. We can have no occasion to consider what force there may be to this argument in a case to which it may be applicable, when the case before us is one where the ground of complaint is that the village has exercised a legislative discretion vested by law exclusively in the municipal authorities, and upon the continuous and unlimited possession and exercise of which no

restraints or limitations can be imposed by themselves or by any other authority than the legislative power of the state.

We have not, so far, considered what the effect upon the contract might have been had section thirteen, added to the ordinance relative to markets, been in force when the contract was entered into. That section appears to have been adopted February 3, 1868, and provided that whenever, in the judgment of the corporate authorities, the market-house should be too small, or from any cause not sufficient to meet the wants of the public, it should be lawful for the corporate authorities to establish other market-houses, or permit the sale of articles named in the ordinance, by any person or persons anywhere within the corporate limits. The contract bore date May 11, 1867, and though it is said the plaintiff does not complain of this amendatory section of the ordinance, it is clear that he had the same right to complain of it, so far as it affected the stipulations of the contract, that he had to complain of any other act in disregard of those stipulations.

Our conclusion is that the village has incurred no liability to the plaintiff by the acts and omissions complained of, and that the judgment of the court below should be affirmed.

CAMPBELL, CH. J., and GRAVES, J., concurred.

CHRISTIANCY, J., did not sit in this case.