CITY OF BRENHAM v. F. W. BECKER.

(No. 1225, Op. Book No. 2, p. 577.)

ERROR from Washington County. Opinion by WATTS, J.

§ 1243. *Monopoly; bill of rights.* "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed," etc. [Const. art. I, sec. 26.] Everything contained in the bill of rights is excepted out of the general powers of government; in short, there is no power in the state that can create a monopoly, for in the emphatic language of the people, speaking through their bill of rights, monopolies "shall never be allowed." The word "monopoly" is derived from the two Greek words, *monos,* alone, and

*polio*, to deal, and is defined to be the sole power of making, dealing in, or being otherwise interested in anything. Bouvier, in his law dictionary, says a grant from the sovereign power of a state by commission, letters patent or otherwise, to any person or corporation, by which the exclusive right of buying, selling, making, working or using anything is given, constitutes a monopoly.

§ 1244. *Municipal corporation; legislative powers of; ultra vires.* The city council of Brenham made a contract with one Smith, the terms of which were in substance: That Smith would erect a building, the upper story of which should be used as a town hall by the city council, rent free for ten years. The lower story should be used as a city market, and Smith was to have the rents accruing from this use for the period of ten years; and the city council were to pass ordinances prohibiting the sale of fresh meats and fish at any other place in the city of Brenham except at this market house. At the end of ten years, if the city had complied with its contract, Smith bound himself to convey the lot and building which belonged to him to the city. In discussing this contract, the court says: The legislative powers possessed by the city council were such only as were delegated by the legislature in the city charter. That is, for convenience in matters of local government, the legislature is authorized and empowered to create municipal corporations, and vest in them a portion of its own legislative powers. These powers, thus invested in the creature of law, are such only as are expressly given, or necessarily implied, and in determining the extent of the authority possessed by these corporations, it is a cardinal principle that the legislature can delegate no power not possessed by itself. The agreement between the city and Smith sought to designate and establish the house owned by Smith as the sole market house for the people of the city of Brenham for ten years, and, as shown by the evidence, the effect of it was to turn over the entire mar-

ket business to his dictations for that time. This could not have been done by the legislature itself, much less by its creature, the municipal corporation. To place the people of the city, with respect to fresh meats and fish, at the mercy of Smith, or any other person, would be to allow a most dangerous monopoly, notwithstanding the prohibition in the bill of rights, which was intended to protect the people against just such monopolies, and to give them the right to have fair competition in the markets to which they must resort to purchase the necessaries of life. And this is one of the most important bulwarks thrown around the liberties of the people. Whatever tends to evade or destroy the effect of it should be denounced as void by the courts of the country. [Bethum v. Hughes, 28 Ga. 560; Gale v. Village of Kalamazoo, 23 Mich. 344.] Again, it is urged that, by said agreement, the city council undertook to abdicate, or contract away, its delegated legislative powers. Under the charter, the city council had authority to regulate markets and market houses, to designate the same, and to provide for the inspection of meats, etc. By the agreement with Smith, the city council undertook to bind itself to not only designate a particular house as the sole market place for the city, but also to bind itself that such designation should continue for ten years, and during all that time, without regard to the convenience and necessities of the people of the city, no other house should be designated as a market place. This certainly was an attempt upon the part of the city council to barter away and abdicate the legislative power vested in it by the legislature, to be exercised upon all occasions, and as often as it might become necessary to meet the convenience of the people of the city. In this particular, the agreement between the city council and Smith is clearly *ultra vires* and invalid. [Gale v. Village of Kalamazoo, *supra.*]

December 14, 1881.          Reversed and dismissed.

NOTE.— The foregoing was an injunction suit brought by appellee against the city of Brenham to restrain and prohibit the city authorities

from proceeding further with certain prosecutions instituted against him as a butcher for violating an ordinance which prohibited the sale of fresh meats, etc., except at the city market house. The injunction was granted by the county judge, and, upon trial of the case, was made perpetual. It was held that the ordinance violated by appellee was valid, not being shown to depend upon the invalid contract with Smith, and that, if he was being illegally or improperly prosecuted for its violation, his legal remedy was adequate and complete, and he could not resort to the equitable remedy by injunction. The judgment of the county court was, therefore, reversed, and the suit dismissed.