THE NILES WATER WORKS v. THE MAYOR, RECORDER AND ALDERMEN OF THE CITY OF NILES.

*City charter—Power of common council to contract debts or incur liabilities —Contract construed, and held to fall within the prohibitions of charter, and therefore void—Being void, no recovery can be had for what has been furnished the city under it.*

1. Where a city charter prohibits the common council from contracting debts or incurring liabilities exceeding in any one year the revenue for such year, unless authorized by a majority vote of the electors of the city, a contract made by the common council, without such vote, for the use of at least fifty water hydrants, per year, at fifty dollars each, for a term of thirty years, creates a liability against the city to the full extent of the thirty years' rental, which aggregate liability being in excess of the revenue authorized to be raised in any one year, the contract falls within the language, as well as within the mischief of the prohibition, and is void.

| | |
|---|---|
| 59 | 311 |
| 71 | 230 |
| 59 | 311 |
| 81 | 421 |
| 59 | 311 |
| 94 | 606 |
| 59 | 311 |
| 103 | 583 |
| 59 | 311 |
| 115 | 281 |
| 115 | 503 |
| 59 | 311 |
| 119 | 491 |
| 59 | 311 |
| 124 | 395 |
| 124 | 396 |
| 59 | 311 |
| 154 | 561 |
| 154 | ³570 |

2. A city council is only an agency to represent the people of the munici-
pality, and the Legislature having given them what is deemed ample
power to raise money, year by year, for the needs of each year, and
no more, if they desire to make larger outlays, or to burden the
future revenues of the city, it is left to the parties more directly inter-
ested to determine how far this shall be done.

3. The contract being void, there can be no recovery for what has been
furnished under it.

Error to Berrien.   (Smith, J.)   Argued October 8, 1885.
Decided January 27, 1886.

Assumpsit.   Plaintiff brings error.   Affirmed.   The facts
are stated in the opinions.

*O. W. Coolidge, Spafford Tryon* and *Cheever & Under-
wood*, for appellant :

An obligation under a contract to pay for work when per-
formed, does not constitute an indebtedness, within the
meaning of the constitution : *Dively v. City of Cedar Falls*,
27 Ia. 227; and a sum payable upon a contingency is not a
debt, and does not become such until the contingency has
happened : *People v. Arguello*, 37 Cal. 524; and when it is
uncertain whether anything will ever be demandable under
the contract, there can be no debt : *Wentworth v. Whitte-
more*, 1 Mass. 471–3; *Weston v. Syracuse*, 17 N. Y. 110,
458.   This general principle has been applied to just such con-
tracts as the one before us : *N. Y. Mut. G. L. Co. v. City
of New York*, 49 N. Y. 227; *Davenport G. L. etc. Co. v.
Davenport*, 13 Ia. 229, 234; *Grant v. City of Davenport*, 36
Ia. 396; *French v. City of Burlington*, 42 Ia. 614; *Bur-
lington Water Co. v. Woodward*, 49 Ia. 58; *E. St. Louis v.
E. St. Louis G. Co.* 98 Ill. 430; *Prince v. Quincy*, 105 Ill.
138; *Quincy v. Bull*, 106 Ill. 337; *Valparaiso v. Gardner*,
97 Ind. 1.   [Counsel discuss the question of the power of
the common council to contract for water, independently of
the statute, asserting such power and citing authorities.
REPORTER.]

Granting that the contract is *ultra vires*, so far as it has
been executed, it will be enforced.   In the case of *Gale v.
Village of Kalamazoo*, 23 Mich. 353, this proposition is
recognized; also in *E. St. Louis v. E. St. Louis G. etc. Co.*
98 Ill. 415; *Parish v. Wheeler*, 22 N. Y. 494, 508; *Day v.
Spiral Spring Buggy Co.* 57 Mich. 146; *Bissell v. M. S.
& N. I. R. R. Co.* 22 N. Y. 262, 279.

Plaintiff was entitled to have the case submitted to the jury upon the common counts, the contract price being the measure of damages: *Begole v. McKenzie,* 26 Mich. 470; *McGraw v. Sturgeon,* 29 Mich. 426; *Moon v. Harder,* 38. Mich. 566.

*Theo. G. Beaver* and *Edward Bacon,* for defendant:

The contract entered into [see dissenting opinion of SHER-WOOD, J.] was prohibited by section 32 of the charter of the city of Niles. In it the city did incur a liability exceeding its revenue for 1878, the year the contract was made: *Nougues v. Douglass,* 7 Cal. 79; *San Francisco Gas Co. v. Brick-wedel,* 62 Cal. 641; *Smith v. City of Newburgh,* 77 N. Y. 134. The limitation in charter "to defray the expenses thereof" cannot extend to any such liabilities as those which the contract purports to incur for the city, namely, to pay a yearly rental of fifty dollars a hydrant, for thirty years: *Quincy v. Jackson,* 113 U. S. 337; *Upton v. Kennedy,* 36 Mich. 220; *Newell v. People,* 7 N. Y. 9, 87; *Davis v. Town of Harrison,* 46 N. J. Law, 79; *Litchfield v. Ballou,* 114 U. S. 190.

Every form of liability under the written contract was in excess of the power "to contract debts and incur liabilities," and was plainly prohibited by section 32 of charter: *Spring-field v. Edwards,* 84 Ill. 632; *Jonas v. Cincinnati,* 18 Ohio, 318; *Wallace v. San Jose,* 29 Cal. 180; *Bladen v. Philadel-phia,* 60 Penn. St. 464; *Newell v. People,* 7 N. Y. 9, 87. The alleged liability and indebtedness under the contract were prohibited by law, hence plaintiff cannot recover under any implied contract for the same liability or indebtedness, or any part thereof: *Detroit v. Michigan Paving Co.* 36 Mich. 338; *Thomas v. Richmond,* 12 Wall. 349; *John v. Larson,* 28 Wis. 604; *Smith v. Bean,* 15 N. H. 577; *Mc-Donald v. The Mayor etc. of N. Y.* 68 N. Y. 23; *Hitch-cock v. Galveston,* 96 U. S. 351; *Mosher v. School District,* 44 Ia. 122; *Council Bluffs v. Stewart,* 51 Ia. 385; *Litch-field v. Ballou,* 114 U. S. 193.

"The powers of corporations, organized under legislative statutes, are such, and such only, as these statutes confer:" *Thomas v. R. R. Co.* 101 U. S. 82; and "if any doubt exists as to the right claimed by a corporation, it should be solved in favor of the public:" *Detroit v. Mutual Gas L. Co.* 43 Mich. 607.

CAMPBELL, C. J. This action was brought to recover for the price of furnishing hydrants and water to the city of

Niles.   All of the bills presented were under a written con-
tract, and for the contract price.   The defense allowed at
the circuit was the illegality of the contract.

This contract was one made in 1878 with Solon L. Wiley,
plaintiff's assignor, whereby he was to have exclusive privi-
leges of supplying water from Barron lake for thirty years,
and of laying mains and pipes for that purpose.   The city
agreed to use at least fifty hydrants a year, at the price of
fifty dollars a year, making an annual expenditure of $2,500.

The charter of Niles contains a provision that the common
council shall have no power " to contract debts, incur liabili-
ties, or make expenditures in any one year which shall exceed
the revenue for the same year, unless first authorized to do
so by a majority vote of the tax-payers of said city, at a pub-
lic meeting thereof called and conducted as hereinafter pro-
vided."   Local Acts 1877, p. 505.

We have found nothing in any statute to vary this, and
the amendment of 1877 is in some respects more explicit
than the section as before existing.

It is not claimed that any authority was ever given to make
this contract by vote of the tax-payers.   The annual rental
of $2,500 did not exceed, with other expenses, the authorized
annual levy for past years.   The aggregate sum of $75,000
would exceed any such percentage as is allowed in any one
year.

We have had occasion heretofore to consider the general
policy of our city charters in confining obligations to the
annual appropriations, where not otherwise authorized.   It is
not necessary in the present case to determine whether, if the
aggregate rental for thirty years should be brought within
one year's revenue, it could be maintained as authorized.   It
has been held by several courts, whether correctly we shall
not inquire, that nothing is an actual debt which depends on
future accruing, and that under such a contract as this each
year's rental did not become a debt until the year came
round.   However this may be, there can be no doubt in our
opinion that this whole contract obligation is a " liability " to
the full extent of the thirty-years rental ; and it is equally

clear that all unpaid sums would be aggregated until paid. It seems to us to come within the language, as well as within the mischief, of the prohibition. The city council is only an agency to represent the people of the municipality, and the Legislature has seen fit to give them what is deemed ample power to raise money year by year for the needs of each year, and no more. When they desire to make larger outlays, or to burden the future revenues of the city, it is left to the parties who are more directly interested to determine how far this shall be done.

There is no occasion to construe terms beyond their natural meaning; and as this clause was intended for beneficial purposes, and to carry out the constitutional mandate to restrict the powers of cities and villages in taxation, borrowing money, and contracting debts (Const. art. 15, § 13), it should be given its full effect.

If this contract is void, there can be no recovery for what has been furnished under it. There would be little safety in any such restriction, if it could be evaded by claims, year after year, of the very same thing which was prohibited to be contracted for. As this question has been settled by our own decisions, we need not inquire elsewhere: *Detroit v. Michigan Paving Co.* 36 Mich. 335; *Detroit v. Robinson,* 38 Mich. 108.

The judgment below should be affirmed.

CHAMPLIN and MORSE, JJ., concurred.

SHERWOOD, J. (*dissenting*). The defendants are a municipal corporation, organized under a special charter, and invested with the usual powers, and charged with the performance of such duties as generally pertain to the position of governing bodies in cities in this State. They constitute the common council of the city of Niles.

By the charter of the city the common council are authorized to take such action as may "be necessary to secure said city and the inhabitants thereof, against injuries by fire," and "to construct reservoirs;" also "to provide for supplying such reservoirs with water;" and "to adopt measures

for the preservation of the public health;" and "to make by-laws and ordinances to improve the condition of the inhabitants of the city, * * * not inconsistent with the laws and constitution of this State, and the constitution of the United States." Sess. Laws 1859, act No. 134, §§ 13, 15, 16.

The plaintiff is a corporation organized under "An act to authorize the formation of companies for the introduction of water into towns, cities and villages in the State of Michigan:" How. Stat. § 782; Laws 1869, 188. The first section of this act will be found in the margin. [1]

On the twenty-eighth day of October, 1878, the common council of the city of Niles passed the following resolution:

"*Resolved*, that it is deemed necessary and expedient that the city of Niles should be supplied and protected by a system of water-works, and that it is not deemed expedient that the city should build the same."

Previous to the adoption of this resolution a system of water-works to supply the city with water from Barron lake, which lies about four miles from the corporation, had been commenced and partly completed, but the company engaged in the undertaking became unable to go on with the work for want of means, and the next day after the adoption of the foregoing resolution the common council of the city entered into a contract with Solon L. Wiley, of Boston, for

---

[1] "Section 1. *The People of the State of Michigan enact*, That whenever the common council of any city or incorporated village, or the municipal authority of any town in this State, shall, by resolution, declare that it is expedient to have constructed works for the purpose of supplying such city, village, or town, and the inhabitants thereof, with water, but that it is inexpedient for such city, town, or village, under the power granted in its charter, to build such works, it shall be lawful for any number of persons, not less than five, to organize a company for the construction of such water-works, or for any company previously organized to construct such water-works under the provisions of this act; and such corporation shall have all the powers and privileges prescribed in the act in regard to corporations, being chapter fifty-five of Revised Statutes of 1846, and chapter seventy-three of the Compiled Laws. They shall be capable of suing and being sued in any court of this State; may have a common seal, and alter and amend the same at pleasure; may elect, in such a manner as they may determine, all necessary officers; may fix their compensation and determine their duties; and make from time to time such by-laws, not inconsistent with the constitution and laws of this State, as a majority of the stockholders shall choose."

the purpose of securing a supply of water for the city from said lake. A copy of this contract is given in the margin. [2]

Within the year, and on March 29, 1879, the contract was assigned by Mr. Wiley to the plaintiff corporation, which went into possession of the works then in progress, and completed the same; and on the twenty-second of September, 1879, gave written notice to the city that forty-four of the fifty hydrants were set and ready for use, and that rent would

[2] "This agreement, made and entered into this twenty-ninth day of October, A. D. 1878, between the mayor, recorder, and aldermen of the city of Niles, county of Berrien, and State of Michigan, of the first part, and Solon L. Wiley, of the city of Boston, State of Massachusetts, of the second part:

"Witnesseth, that the said parties of the first part, in order to encourage and promote the introduction of water from Barron lake, sufficient to supply the city of Niles and its inhabitants for public and private uses, have granted and agreed, and by these presents do grant and agree, to and with the said party of the second part, his heirs and administrators, executors and assigns, that he and they shall have the exclusive right and privilege of laying down and maintaining water-mains and water-pipes in the streets, alleys, and public places of said city, for the introduction of water from Barron lake, for the purposes aforesaid, for and during the term of thirty (30) years from and after the date of this agreement; such grants and privileges to be held and enjoyed, however, subject to the faithful performance of the covenants, conditions, and limitations which are hereinafter contained, and which the common council of said city may hereafter establish and ordain, to regulate the manner of breaking ground and excavating to lay down and repair the said mains and pipes, the location of hydrants, and for the payment of any damages which may be sustained or liability incurred by reason of the use and occupation of the said streets, alleys and public places by the said party of the second part, his heirs, administrators, executors, or assigns, as aforesaid, and that said streets, alleys, and public places and cross-walks, so used, occupied, or disturbed, shall be left in as good condition as before; and the said parties of the first part further agree that during the term of thirty years from and after the introduction of the water as aforesaid they will take and use water for fire purposes, and for flushing or washing out gutters and sewers, from at least fifty hydrants or fire plugs, of such size as have been located pursuant to a resolution of the common council, adopted July 10, 1877, and to pay for the use of the same at the rate of fifty dollars per annum for each hydrant or fire-plug, and the said party of the first part may use any such hose or attachment as it may see fit, and to pay the rental as aforesaid to the said party of the second part, his heirs, executors, administrators, or assigns, semi-annually on the first day of April and the first day of October of every year, after the introduction of the water as aforesaid.

"The said party of the second part, for himself, his heirs, executors, administrators, and assigns, hereby covenants and agrees that he will forthwith undertake the enterprise aforesaid, and will actually commence work on the same within one month from the date of this agreement, and progress with due diligence to its final completion; and that within one year from date hereof he will have completed the same, by having laid down a main pipe, of not less than one foot in diameter, from Barron lake through and to the foot of Main street, in said city, and suitable

be charged on the same from and after October first following, subject to the terms and conditions of the contract under which the work had been done.

On the thirtieth of November, 1879, the council was further notified in writing by the plaintiff that the remaining six hydrants had been set, and were ready for use, and that rent would be charged on those from November 1, 1879, under the contract.

At this time it was claimed by the plaintiff that the works

pipes through and along such other streets as have been designated by the common council by said resolution of July 10, 1877, and to and through such other streets and points as it may designate for the location of hydrants or fire-plugs as aforesaid: *Provided*, that the average distance between said hydrants or fire-plugs shall not exceed five hundred feet, the measurement to commence at the first hydrant erected on the main pipe; and that he and they will at all times during the period of thirty (30) years aforesaid maintain an ample and constant supply of water from said Barron lake for the use of fifty (50) hydrants above mentioned, and for such additional number as the common council may from time to time require and agree for.

"And, further, that he and they will, at all times during the period above mentioned, supply water for the use of all of the inhabitants of said city who may desire the same for domestic purposes or for manufactories, and to furnish and supply the same at a fair rental, subject to the provisions of the statutes in such cases made and provided: *Provided, however*, that the said party of the second part shall not be required to furnish water for private use on any street beyond the outmost hydrant on the same; and the said party of the second part further covenants and agrees that he will furnish water for drinking and washing purposes, without charge, during the term aforesaid, to and for the use of all the public school buildings in said city, and the buildings owned or used by the said city for municipal purposes, and also a supply of water for all drinking fountains the city may choose to erect, on condition, however, that the use of water in said school and municipal buildings shall be subject to the same rules and restrictions as are imposed upon private consumers, except as to the payment of rental for same: and *Provided, further*, that the said party of the second part shall not be called upon to replace or repair at his own expense such hydrants or fire-plugs as may have been broken or injured by the carelessness or ill-usage of firemen or public employes. It is further agreed by said parties of the first part that the common council of said city will, as soon as practicable, provide by ordinance for the proper protection of the property of said party of the second part from injury or molestation by wrong-doers, and for the enforcement of such rules and regulations concerning the use of water, hydrants, and pipes, and the payment and collection of water-rents, as may be reasonably required.

"And the party of the second part further agrees to keep in good repair the works now laid or to be laid under this contract; and it is further agreed that no pipe shall be laid less than six inches in diameter, excepting the pipes now on hand in the city of Niles; and, further, that the line of four-inch pipe now laid and extending north on Front street to High street, if deemed to be insufficient for the protection of property in that vicinity, shall be taken up and replaced by pipe of larger size, or

had been fully completed in accordance with the contract, and the city commenced using the water.

After these notices, and up to the time of the commencement of this suit, the city used the water and works in the extinguishment of fires, and to wash out the gutters. It also used the works to supply the engine house, jail, and common council room, and the common council ordered three hydrants opened for drinking fountains, and raised the money by taxation to pay for the water.

---

that an additional line of pipe shall be laid connecting the line of pipe on Fourth street with that of Front street, along High street, by and at the expense of the said party of the second part; and, further, that where pipes are to be laid across St. Joseph river they are to be laid on the bottom of the river.

"And it is further agreed that if the supply of water at any hydrant shall cease, then the city shall not be liable to pay rent for the same during the time of such stoppage, unless such stoppage be caused by breakage or neglect by the firemen or public employes of the party of the first part

"And it is further agreed that if the party of the first part shall so elect, it may make all of the extensions for hydrants, and to tap any mains or pipes now or hereafter to be laid to supply hydrants for fire purposes, in addition to the number specified in a resolution of the common council of the city of Niles, adopted July 10, 1877, designating and locating (50) fifty hydrants, the party of the first part to lay no pipes less than six inches in diameter, nor less than six feet deep, and under the supervision of the superintendent of the water-works, and they shall be properly laid, and in a good and workmanlike manner, and to the *acceptance* of said superintendent.

"And the said party of the first part agrees to deed and transfer all such extensions laid by it to the said party of the second part, his heirs, executors, administrators, and assigns, who are hereby bound to keep such pipes in good repair, the party of the first part reserving the right of using water for fire purposes, and for flushing gutters and sewers; the water for such additional hydrants, as above specified, shall be without rental to be paid by the party of the first part: *Provided, however*, that if the said party of the first part shall elect to purchase said water-works at the expiration of fifteen years, as in this agreement provided, or at any time when the contracting parties may agree, then that the title to all pipes laid and hydrants put in by the said party of the first part, and deeded by them to said party of the second part, his heirs, executors, administrators, and assigns, if any be so laid or put in, shall revert to said party of the first part, and the cost or value of such hydrants and pipes shall not be estimated or included in the price of such purchase.

"If the party of the first part does not elect to put in its own hydrants and lay extensions therefor, as above provided, then as to any hydrants in addition to the fifty (50) mentioned in said resolution of July 10, 1877, if the party of the first part shall elect to take any such additional hydrants, then the party of the first part shall in the manner aforesaid pay an annual rental of fifty dollars ($50) for every such additional hydrant that it elects to take.

"It is further mutually understood and agreed that all the mains, pipes and hydrants laid and placed in said city by said party of the sec-

The plaintiff declared specially in five different counts upon the contract made with its assignor, Solon L. Wiley, by the defendant, to recover for the amount claimed to be due plaintiff for the rental value of the fifty hydrants mentioned in the contract, to the first day of April, 1883, amounting to the sum of $9,406.34. The declaration also contained the common counts in assumpsit.

To this declaration the defendant pleaded the general issue, with notice that the defendant would show on the trial that the plaintiff was indebted to the defendant in divers amounts for the use and occupation, which it would claim by way

---

ond part, his heirs, executors, administrators, and assigns, or transferred to him or them as above specified, shall be and remain the property of the said party of the second part, unless the said parties of the first part shall elect, after the expiration of fifteen years from the date of this agreement, to purchase the said water-works, including the right of way from the lake, and all the mains, pipes, hydrants, and appurtenances thereunto pertaining ; and they shall have the right and option to purchase the same and terminate this agreement by paying a fair price for the same, to be ascertained and determined in case of disagreement of said parties by arbitration in the manner provided by statute, reference being had to section 3370 of the Compiled Laws of this State of 1871, and any acts amendatory thereof or supplementary thereto, now enacted or hereafter to be enacted.

" And it is further agreed by the said party of the second part that he will, at his own expense, erect, build, and complete, and at all times maintain, within the corporate limits of said city, and in the vicinity of Thirteenth street, a stand-pipe or reservoir, connected with the said water-works, with a capacity of not less than three hundred thousand gallons, and furnish a head of water 100 feet above the level of Front street at its intersection with Main street, in said city, and will at all times keep such supply therein ; the said stand-pipe or reservoir to be erected and completed within the time provided for the completion of said water-works.

" And it is further agreed that on the failure of the party of the second part to undertake and complete the said work within the time specified, or to keep or to perform any of the covenants or agreements on his part in this contract contained, then that all the rights, privileges and easements herein contained, granted by the said party of the first part, shall cease.

" And it is further mutually agreed that every covenant and agreement on the part of the party of the first part in this contract contained, shall be binding on said party and its successors, and that every covenant and agreement by the said party of the second part in this contract contained shall be binding on the party of the second part, his heirs, executors, administrators, and assigns.

" In witness whereof, the said parties of the first part have caused its corporate name to be hereunto subscribed, and its corporate seal affixed, by the mayor and recorder, by order of the common council, and the said party of the second part has hereunto set his hand and seal.

[Signed]                    " G. W. Platt, *Mayor*, and
                            " J. H. Richardson, *Recorder*,   [Seal.]
                            " Solon L. Wiley."

of set-off to the demands of the plaintiff; and that plaintiff had failed to comply with the terms of the contract declared on, in consequence whereof it was not entitled to recover anything against the defendant. Several other matters were set up in the notice, which it is unnecessary to consider further here.

A jury was impaneled, and the cause was tried in the Berrien circuit before Judge Smith, who, after the testimony was all in, directed a verdict for the defendant on the ground that the city of Niles could not make the contract that it did for the rental of the hydrants; that it was a violation of the charter, which limits the amount of indebtedness to be raised in one year to 1½ per cent. of the taxable property in the city, without a vote of the city; that the contract made with Wiley is void, and cannot be ratified by the city; that the declaration counts specifically upon this contract; and that no recovery can be had under the common counts. To these rulings counsel for the defendant excepted. Other rulings were made upon the trial, and exceptions taken; but those only relating to the rulings of the court in taking the case from the jury are under consideration upon this record.

The charter of the city of Niles was amended the twenty-third day of May, 1877, whereby the common council was limited in the amount of taxes they could levy and collect in any one year on real and personal property to 1½ per cent. on the valuation thereof, exclusive of the costs of collection; and were prohibited from contracting debts, incurring liabilities, or making expenditures exceeding the revenues raised during the same period, unless first authorized to do so by a majority vote of the tax payers of the city.

It is claimed on the part of the defendant that the agreement of the common council to pay the $2,500 annual rental for the fifty hydrants, for thirty years, creates an indebtedness on the part of the city of $75,000, and it does not appear that a vote of the majority of the taxpayers was ever taken authorizing the creation of such indebtedness.

We do not think such is the proper construction of the contract. The indebtedness of the city for the use of the

city is an annual one, and does not accrue until the end of the year, and it then does not exceed $2,500 ; nor does the record show that that amount will increase the annual expenses to be raised upon the taxable property of the city beyond the amount the council is authorized to raise without such vote of the tax-payers.    Indeed, the testimony appearing in the record, and that which was offered (and improperly rejected by the court, as we think), shows that the assessments made and money raised during the years 1880, 1881 and 1882, and which did not exceed the 1½ per cent. was quite sufficient to have liquidated the plaintiff's claims now in suit in the present case, if taken from the unappropriated balances of those years ; so that, so far as appears, there has never been a time when the money to pay for these hydrant rentals, under the contract made by Wiley with the city, has not been available for that purpose under an assessment of 1½ per cent. or less upon the taxable property of the city.   The rate in 1880 was but 1 per cent., and in 1881 but three-fourths of 1 per cent.

That this contract does not create an indebtedness in any one year requiring the voters or the taxpayers of the city to authorize, I think is fully sustained by the following authorities : *Dively v. City of Cedar Falls,* 27 Iowa 227 ; *People v. Arguello,* 37 Cal. 524; *Wentworth v. Whittemore,* 1 Mass. 471, 473 ; *Weston v. Syracuse,* 17 N. Y. 110 ; *Garrison v. Howe,* Ib. 458 ; *New York Mut. G. L. Co. v. City of New York,* 49 How. Pr. 227 ; *Davenport Gas Light Co. v. Davenport,* 13 Iowa 229.

The liability is at all times contingent under the contract. If no water is furnished, no liability exists ; and the annual rental is an indebtedness, in any event, relating to the ordinary expenses of the city : *Grant v. City of Davenport,* 36 Iowa 396 ; *French v. City of Burlington,* 42 Iowa 614 ; *Burlington Water Co. v. Woodward,* 49 Iowa 58 ; *East St. Louis v. East St. Louis G. Co.,* 98 Ill. 430 ; *Prince v. Quincy,* 105 Ill. 138 ; *Quincy v. Bull,* 106 Ill. 337 ; *Valparaiso v. Gardner,* 97 Ind. 1.

There can be no question, I apprehend, but that the supplying of the public needs of the city of Niles with water is

a part of the ordinary and necessary expenses of the city, and fully authorized by the provisions hereinbefore referred to in the original charter ; and I think the contract made for that purpose does not fall within the charter inhibitions as to the indebtedness created therefor.

It is further claimed by counsel for defendant that the contract of Mr. Wiley is void for the reason that it creates a monopoly ; that the city has, by making this contract, divested itself of some portion of its legislative authority in giving to Mr. Wiley the exclusive privilege of supplying the city with water from Barron lake.

I am not able to concur in this view of defendant's counsel.    It does not appear from the record that the municipality of Niles ever acquired any interest in or control over the water in Barron lake.    It lies several miles distant from the city limits, and the right of way and the pipes therein conducting the water to the city are the exclusive property of the plaintiff.    It is true, by the terms of the contract, the said Wiley secured the exclusive right of laying down pipes in the streets and alleys and public places in the city, for the introduction of water therein from said lake for the period of thirty years.    The places wherein the pipes were to be laid, and the hydrants placed, are left to the designation of the city.    The condition of the grounds used is not to be changed, and the repairs of the mains, pipes and hydrants are to be under the control of the council.    If, in order to secure the water for the uses of the municipality, but one line of pipe could be used in the streets and alleys, certainly no monopoly would be created by permitting their use by Mr. Wiley or his assignee, because there could be no chance for competition in this use ; but that such is not the case is a matter of common observation and experience.    Several lines of pipe may be laid under the street, through which water may be conducted to all parts of the city without injury or detriment to the ordinary and common use made of the street for other purposes ; neither is the city required to use the waters discharged from the plaintiff's hydrants any longer than it chooses, except for the specific purposes therein designated,

and from the number of hydrants therein mentioned. It is not the exclusive privilege of laying water-pipes through the streets and alleys of the city, but the exclusive right to lay them for conducting water from Barron lake, that is given to the plaintiff. There is no attempt to interdict the use of water from any other source. The city is not prevented from adopting and maintaining any other system of water-works, neither is it prohibited even from abandoning the use of Barron lake water entirely for the purposes stated in the contract; and should it do so, it would only subject itself to the damages which the plaintiff might sustain by defendant's failure to take water from the hydrants.

"Municipal corporations possess a double character: the one, governmental or legislative or public; the other, in a sense, proprietary or private. In the first capacity it is one of the instruments of the State or the local depositary of certain limited or prescribed political powers; while in the last capacity, as to powers and property acquired thereunder, and as to contracts made with reference thereto, the corporation is to be regarded as *quoad hoc* a private corporation: 1 Potter, Corp. 476, §§ 394, 395; 1 Dill. Mun. Corp. § 39; *Oliver v. Worcester*, 102 Mass. 489, 500. Such corporations, though made use of in state governments, and in that character are subject to state control, have other objects and purposes peculiarly local, in which the state at large, except in conferring and regulating its exercise, is legally no more concerned than it is in the individual and private concerns of its citizens." *People v. Common Council of Detroit*, 28 Mich. 228; *Bailey v. Mayor of N. Y.*, 3 Hill 531; *People v. Hurlbut*, 24 Mich. 44; *Richland Co. v. Lawrence*, 12 Ill. 8.

The contract for the purchase of the waters from Barron lake was made by the City of Niles, acting under its proprietary or private powers, and the authority exercised in granting the use of its streets and alleys for the purpose of aiding and securing that object is derived from the same source. The purpose for which the contract was made was a private one, in which the State was not interested. The benefit to be derived by the city was of a local character, and I have not been able to discover that the common council of the city have, by this contract, undertaken to divest the corporation

of any portion of its legislative authority, or to create a monopoly which is obnoxious to any provision of the constitution of our State.

The provision in the contract by which the council agrees, as soon as practicable, to pass ordinances for the purpose of affording protection to the property of the plaintiff in the water-works, over which the city is given control within the corporate limits of the city, only enjoins the performance of a duty already existing, and is unobjectionable in my view of the case. It violates no public policy, and invests the plaintiff with no powers of dictation as to what means shall be adopted in giving such protection.

It is sought, by defendant's counsel, to bring the case within the rule laid down by this Court in *Gale v. Village of Kalamazoo*, 23 Mich. 344, but the cases are entirely unlike each other. In the latter the contract bound the village authorities not to permit any other market-house for the sale of certain commodities except the one to be erected by the plaintiff, and to restrain marketing the same at any other place within the corporate limits. It not only required legislative action on the part of the village, but undertook to control such action in such manner as to exclude all competition in the business carried on by Gale, by compelling the people to purchase, if at all, at his market-house in the village.

We find none of these obnoxious features in the contract the city made with Wiley. It may further be observed, in that case, the action was brought to recover damages by the refusal of the village to carry out its contract by using and occupying the market-house.

In this case the plaintiff only seeks to recover for the use and occupancy of the plaintiff's actually enjoyed by the city, and for the water actually delivered to and received by it. By this action the city is asked to do nothing more. By the contract in question no citizen in Niles is compelled to take water from the plaintiff; neither is the city prevented from supplying water to the city or its inhabitants at such points as they wish, and laying down as many pipes in its streets as may be necessary or convenient for the purpose.

I see no occasion for discussing the subject of whether or not the city has the right, under its charter, or whether the Legislature can grant the right, to invest any individual or corporation with the exclusive privilege of laying pipes in the streets and public grounds of the city of Niles for the purpose of distributing water to the city and its inhabitants. That question is not involved in this case. If it were, I think the briefs of the plaintiff's counsel show that several well-considered cases may be found sustaining the affirmative view of the proposition. I have failed to discover that the contract violates any provision of the charter of the city, or creates any monopoly, or violates any principle of public policy.

The city, as we have already said, had the power under its charter to supply itself and its inhabitants with water, unless restrained from so doing; and in the exercise of its powers relating to its private affairs could contract with an individual or a corporation for that purpose. The statute of frauds has no application to the case.

Whatever right the plaintiff had to furnish the water was derived under a contract in writing, and so long as the defendant used the property of the plaintiff, and took water from the hydrants, it did so under its provisions, and common fairness requires that they should pay for what they received the amount agreed upon in the contract, or cease using the hydrants. If the defendant had any legal defense to the plaintiff's claim, it should have been presented to the jury under the proper instructions from the court. *Prima facie* a case was made by the plaintiff, and the jury should have been allowed to pass upon it.

I think the declaration was sufficient to have supported a judgment upon the case made by the plaintiff, and it was error to take it from the jury.

The judgment should be reversed, and a new trial granted.