ENOS PUTNAM v. CITY OF GRAND RAPIDS AND THE ELECTRIC LIGHT & POWER COMPANY.

*Injunction by tax-payers to restrain enforcement of municipal contracts-Street lighting—Current liabilities of citizens.*

1. Owners of taxable property can maintain a bill to enjoin the municipality in which it lies from executing a contract if its effect would be to increase their burdens by way of taxation to an amount sufficient to bring the case within the jurisdiction of equity.

2. Complainants may properly join in an injunction bill where their grievance, though not joint, is common, and the cause thereof and the relief they seek is the same.

3. Courts cannot stand between the public and their regularly elected authorities unless the latter exceed their powers; so long as they do not, the people must bear the consequences of their folly or choose wiser representatives; the discretion necessarily vested in a public functionary cannot be reviewed.

4. Equity cannot interfere with municipal contracts on the ground merely that they are impolitic or unwise, but it may if they violate the municipal charter.

5. Charter provisions empowering the common council to regulate the lighting of public lamps and to employ a suitable person to superintend them do not confine the management of the lighting apparatus, or of any part of it, to the city government, nor exclude the use of gas or electricity controlled from a central point. Such provisions are neither exhaustive nor imperative.

6. Charter provisions prohibiting the creation of municipal liabilities in any one year exceeding the amount to be raised by tax and providing that payments on a municipal contract shall be made from sums raised by tax for the year for which such contract is made, have the

effect of forbidding the creation of future responsibility for annual current expenses.

7. Towers for electric lights are not "local improvements" any more than lamp-posts are, so long, at least, as the system of lighting is not owned by the municipality.

Appeal from the Superior Court of Grand Rapids. (Parrish, J.) October 30.—November 4.

INJUNCTION bill. Defendants appeal. Affirmed.

*Smiley & Earle* for complainants, as to the right of a taxpayer to file the bill in this case, cited *Curtenius v. Hoyt* 37 Mich. 583; *Callam v. City of Saginaw* 50 Mich. 7; Dill. Mun. Corp. §§ 914, 921; High on Inj. (2d ed.) §§1298–1300; *Crampton v. Zabriskie* 101 U. S. 601.

*J. W. Ransom* for the defendant City of Grand Rapids, and *Blair, Kingsley & Kleinhans* for defendant Electric Light Company. Individuals cannot maintain a bill to restrain the lawful authorities of a muncipality from taking action, on the ground merely that it is in excess of corporate power : *Miller v. Grandy* 13 Mich. 548; *People v. Regents* 4 Mich. 98; *People v. State Prison Inspectors* id. 187; *Davis v. Mayor* 14 N. Y. 506; *Doolittle v. Broome County Supervisors* 18 N. Y. 155; *Roosevelt v. Draper* 23 N. Y. 318; *Hale v. Cushman* 6 Met. 425; legislative discretion is not to be interfered with by courts: *Torrent v. Muskegon* 47 Mich. 115; *Baker v. Boston* 12 Pick. 184; *Moses v. Risdon* 46 Ia. 251; and a municipality may therefore make contracts running for a series of years : *Indianapolis v. Ind. Gas Co.* 66 Ind. 396; *Lord v. Oconto* 47 Wis. 386; *Gale v. Kalamazoo* 23 Mich. 344; *Richmond Gas Co. v. Middletown* 59 N. Y. 233; *Western Sav. Fund Society v. Philadelphia* 31 Penn. St. 183, 189; *Langdon v. Mayor* 93 N. Y. 130; *Weston v. Syracuse* 17 N. Y. 110; *Grant v. Davenport* 36 Ia. 396; *Valparaiso v. Gardner* 97 Ind. 1; *East St. Louis v. Gas Co.* 98 Ill. 429; *Quincy v. Bull* 106 Ill. 337; *Vincennes v. Callender* 86 Ind. 484; *Neb. City v. Gas Co.* 9 Neb. 339.

CAMPBELL, J. The complainants, who are tax-payers in Grand Rapids, filed their bill to prevent the execution of a contract whereby the city was to make an arrangement with the Electric Light Company to have twenty-five towers put up

in various places and electric lights furnished for five years in the times and manner specified, at twenty-six thousand dollars a year, at the end of which period all the fixed property was to belong to the city, if desired.

The resolutions which authorized this were returned unapproved by the mayor to the common council, and passed over his veto, which was put on the ground of impolicy in making what he considered an experiment. It is not claimed that there is anything illegal in the amount of the appropriation, if otherwise lawful. The chief ground of objection is the creation of an undertaking extending over more than one year. The injunction was granted.

A preliminary objection was made by defendants, on the ground that complainants could not be allowed as private citizens to interfere with a matter of public concern. There are certainly many cases in which they could not legally represent the public and could have no private footing as complainants. But in the present case they appear as owners of taxable property each of whose burdens will probably exceed the sum required to give equity jurisdiction, if the contract stands. This private grievance has been heretofore considered sufficient to authorize them to interfere on their own account, and while their grievance is not joint, it is a common one for the redress of which, if grantable at all, there is no serious objection to their making common cause. Their allegations of the amount of their respective interests are not controverted, and bring them within the statute.

Some part of the bill is taken up with complaints of the impropriety of the arrangement proposed, and various objections are pointed out. These considerations have nothing to do with the legal aspect of the case. The question before us is one of power and not of wisdom, and we are bound to decide it on strictly legal grounds. If the charter would be violated by the proposed contract, the illegality involves such a grievance as may be dealt with in a court of equity, and the injunction must stand. If not, then the bill cannot be maintained.

Counsel for complainant did not on the argument dwell much upon such parts of the case as rest on assertions of the

impropriety of the contract as unwarranted by the true policy of the city. It is alleged to be more expensive than other modes of lighting, and in other ways impolitic and not desirable. But we find no charges of dishonest or fraudulent conduct.

There has been an idea in some places, as apparent from reported cases, that courts of equity can always stand between citizens and municipal authorities, to shield them from abuses and extravagant action. This is not one of the functions of courts. It is one of the incidents of popular government that the people must bear the consequences of the mistakes of their representatives. No court can save them from this experience. It is one of the means of teaching the necessity of choosing proper servants, and being vigilant to obtain reform from abuses. The discretion which is necessarily vested in public functionaries cannot be reviewed by any one else. If they go beyond the range of the discretion given them, and mischief happens or is likely to happen, a case arises for the interference of judicial authority to keep them within the lines bounding their agency. But their mistakes within those lines are beyond legal redress. Whether the present case authorizes it depends upon the effect of the city charter.

Although our legislation on municipal subjects has been unstable, yet every city charter is enacted and intended for permanence, and in view of both extended bounds and growing population. It usually leaves a wide range of discretion in the choice of ways and means of promoting public as well as private convenience. It does not require the community to be deprived of the comfort and convenience of new inventions and improvements, and it usually does not restrict it to any fixed ways. There have been many changes in methods of paving, lighting, building and furnishing water supplies and other needs of civilization. Many of these changes are experimental, and they are not all useful. But such as they are, they are made because they commend themselves to public confidence, or are supposed to do so, and unless restricted by some legal provision a large choice is given to the

corporation.  The present controversy relates to a new method
of lighting which has been allowed by the Legislature to be
managed by corporations, and to have rights of occupancy
in streets and other places, to place its lights and the appara-
tus for furnishing them the means of illumination by the
necessary wires and fixtures.  How. Stat. § 4191.  The law has
placed it on as favorable a footing as gas or oil lighting, and
permitted the companies to contract with cities for easements
and for public lighting.  It is not claimed that the city of
Grand Rapids cannot contract on some terms for electric
lighting.  The only claim tangibly presented by the bill is
whether it can be done for more than one year, and whether
it can be done without giving the management of the public
lights to public officers.

The provisions of the charter in regard to the latter
branch of the subject are found in subdivisions 25 and 36
of the 10th section of title 3, and section 11 of the same
title.  These, so far as they relate to this matter, are as follows:

"*Twenty-fifth.*    To regulate the lighting of the streets
and alleys, and the protection and safety of the public lamps,
and to employ a suitable person to superintend the same, to
prescribe his duties, and fix the compensation therefor.

*Thirty-sixth.*  To provide for and regulate the lighting of
public lamps and the erection of lamps and lamp-posts and
suitable hitching-posts ; to prohibit all practices, amusements
and doings in said streets, having a tendency to frighten
teams and horses, or dangerous to life or property ; to re-
move or cause to be removed therefrom all wells and struc-
tures that may be liable to fall therein, so as to endanger life
or property.

Section 11.  The common council may by ordinance or
otherwise ascertain, establish and settle the boundaries of
all streets and alleys in said city, and prevent and remove all
encumbrances and encroachments thereon, and exercise all
other powers conferred upon them by this act in relation to
highways, common or other schools, the prevention of fires,
the levying of taxes, the supplying of the city with gas and
water, and all other subjects of municipal regulation not
herein expressly provided."

It is difficult to see how any of these provisions can be
held to confine the city to such methods of lighting as would

require the lighting apparatus to be run by the city in whole or in part. There is nothing in either gas or electric lighting which would prevent putting some one in supervision of the matter so far as to see that the lighting is not neglected, and the apparatus is not injured. The functions of any city servant in looking after the mere lighting and extinguishment of gas would not be very important in themselves, as compared with the supply of gas. But it is manifest that these provisions are not intended to exhaust the subjects they refer to, or to be imperative. If they should be so construed there are many matters of daily necessity entirely omitted. Even gas is only referred to by a subsequent section, 11, which is not to be regarded as repugnant, but which, if omitted, would on such a theory of construction, confine the city to the use of lamps instead.

If there is any power to employ electric lighting,—and there can be no doubt of this, especially in view of the subsequent statute òf 1881, which expressly requires cities to allow that light to be introduced, and permits its use for public lighting,—then it must be received in conformity with its nature, which so far at least requires the power which supplies electricity to be transmitted to many lights from one or more central stations, as gas is furnished. The statute contemplates that the companies may do this, and that cities may prefer it to erecting their own works. It would require a much larger inferential power under this charter to establish their own supply than to avail themselves of the supply at hand. No city could be administered upon the merely expressed powers of its charter, without the aid of some implications. The only power expressly given to the city of Detroit to light its streets is in the single clause—" to provide for and regulate the lighting of the said avenues, streets and public places, and the erection of lamps and lamp-posts therein." Ch. 7, § 117. But in *Attorney General v. City of Detroit* 55 Mich. 181, where the representative of the State filed a bill to prevent the completion of a contract for electric lighting, it was not suggested that the city was exceeding its chartered powers in this respect, which would

have been a good ground of complaint, but only that there was some technical irregularity, which, in the opinion of the court, did not concern the State at large, and could not be complained of by the Attorney General.

But the question how far a contract would be valid extending over several years, and requiring annual payments, is a more serious one. The authorities cited on the argument do not favor the idea that there can be no such general power, but they place the inability where it exists, upon charter provisions. If, however, there is any charter provision restraining such contracts, it must be enforced.

The fact that taxes must be raised annually and upon annual estimates is not of itself any objection, for that is usual everywhere, and such estimates often include liabilities for salaries, interest, and other charges which must be met, whether willingly or not, and for which the municipal body must provide. But it is not uncommon to confine cities in their current expenditures to current receipts, and to prevent the creation of future liabilities for purposes that may not seem wise in the future, however prudent they may seem in the present.

Section 20 of title 5 of the charter of Grand Rapids is as follows :

" It shall not be lawful for the common council (except as herein otherwise provided) to borrow money or authorize the creation of any liability or indebtedness against said city in any one year, exceeding in the aggregate the amount which by this act may be raised by tax for such year, and in case any sum or sums of money shall be borrowed by said common council in any one year, or the said common council or any officer thereof shall enter into any contracts for the payment of money binding upon said city, the same shall be paid out of the sums raised by tax for such year, if the payment thereof is not otherwise provided, and all sums of money borrowed by said city shall be applied to the purposes for which the same was borrowed, and for no other purpose whatsoever ; but nothing in this act contained shall be construed to prohibit said common council from making assessments and levying and collecting taxes for the purpose of local improvements."

Aside from borrowing money on time and making local

improvements, it is difficult to see what contracts can often be required by a city, that do not relate to its ordinary business and liabilities. And it seems to us that the fair meaning of section 20 will not permit the creation of future responsibility for annual current expenses. The section seems plainly designed to express, although somewhat clumsily, the idea that contracts not otherwise provided for must contemplate fulfillment and payment by means raised the same year. In the Detroit charter it is required that the tax shall be actually laid in advance of the making of the contract, as was done in the electric light suit entitled *Attorney General v. City of Detroit*, before referred to. In *Garrison v. Chicago* 7 Biss. 480, a time contract was held void because no appropriation had been made in advance, as required by charter. Similar doctrine was laid down in other cases cited on the argument. It is entirely uncertain what any city's future means of payment will be, and a change of boundaries, or a great destruction of property or other casualty, might not only reduce the results of a two per cent. tax in Grand Rapids, but might also require such other and unforeseen outlays that the $26,000 a year provided for by this contract would cripple its resources for necessary uses.

This system of towers cannot, in our opinion, be included under the head of "*local improvements*," for which there is an enlarged power of taxing and assessing. We must consider that phrase in connection with the rest of the charter. These towers are only means of using the electric light, and whatever might have been the case had the city set up its own engines and power, these towers by themselves are of no use, unless furnished with light, and are no more local improvements than lamp-posts and other fixtures.

We place our decision entirely on the restrictions of the charter, and not upon any general incapacity had the charter been silent. In the face of the charter provision the array of authorities allowing time contracts by cities, which is certainly very respectable, does not apply.

The decree must be affirmed.

The other Justices concurred.