MONROE WATER CO. *v.* HEATH.

|115|277|
|---|---|
|116|499|

|115|277|
|---|---|
|124|395|

|115|277|
|---|---|
|128|82|
|h128|83|

1. MUNICIPAL CORPORATIONS—CONTRACT FOR WATER SUPPLY—LIMITATIONS.

A city of the fourth class, under Act No. 215, Pub. Acts 1895, has the power, through its common council, to contract with a water company for a supply of water for public uses and purposes for five years, for a stipulated sum per month, payable on bills to be presented monthly to the common council, provided that the amount so contracted for will not bring the aggregate amount of the general taxes in the city for the purpose of defraying the general expenses, etc. (exclusive of taxes for schools and school-house purposes), to exceed in one year 1¼ per cent. of the assessed valuation of such city, contrary to chapter 30, § 5, of said act.

2. SAME—ANNUAL APPROPRIATION.

Where the common council of a city of the fourth class has exercised its right to contract for a supply of water for a period not exceeding 10 years, at a stipulated sum per month, payable monthly, the required amount must be raised annually for the purposes of that fund, and be included in the annual budget.

3. SAME—ABUSE OF AUTHORITY—LEGISLATIVE QUESTION.

The fact that the council might, in the exercise of such power, tie up the revenues of the city for 10 years for the benefit of the water fund, to the prejudice of other funds, presents a legislative, not a judicial, question.

4. SAME—MAYOR—MINISTERIAL DUTIES—MANDAMUS.

It is the duty of the mayor of a city of the fourth class, either as chief executive under the provision of Act No. 215, Pub.

Acts 1895, chap. 7, § 1, or as president of the common council under chapter 8, § 2, to obey the directions of the council in performing the ministerial act of executing a contract for a supply of water to the city, and *mandamus* will lie to compel the performance of that duty.

*Certiorari* to Monroe; Kinne, J. Submitted October 13, 1897. Decided December 15, 1897.

*Mandamus* by the Monroe Water Company to compel George F. Heath, mayor of the city of Monroe, to execute a contract as directed by the common council. From an order denying the writ, relator brings *certiorari.* Reversed.

*Landon & Lockwood* (*Fred A. Baker*, of counsel), for relator.

*Charles A. Golden* and *Willis Baldwin*, for respondent.

LONG, C. J. On March 6, 1897, the common council of the city of Monroe passed, over the mayor's veto, the following resolution:

"*Resolved*, that a contract between the city of Monroe and the Monroe Water Company for the supply of water for public uses and purposes to the city of Monroe for the period of five years from and after the first day of January last, for the sum of $475 per month, payable on bills to be presented monthly to the common council, be made; and that the written contract presented to this council, and now in the hands of the city clerk, containing said agreement and other stipulations connected therewith, be made and executed on behalf of the city of Monroe, in duplicate, by the mayor and the city clerk, under the seal of the city; and that one copy of such contract, the other being retained by the city clerk, be delivered to the Monroe Water Company, when and on condition that it file a bond in the penal sum of $10,000, with sufficient sureties, conditioned that said company shall faithfully perform said contract, pay any and all damages which the city may sustain and judgments which may be recovered against it on account of the neglects or failures of said

water company, its servants and employés, and file a new bond in like penalty when required by the common council."

The mayor refused to sign the contract mentioned in the resolution, on the ground that it was illegal and void, and also on the ground that it was not the official duty of the mayor to execute contracts on behalf of the city. The Monroe Water Company, a corporation organized under the laws of this State, thereupon filed a petition in the Monroe circuit court for a *mandamus* to compel the mayor to sign the contract. The mayor, as respondent in that proceeding, filed his answer to the petition. A hearing was had, and the writ denied. The case comes into this court by writ of *certiorari.*

Monroe is a city of the fourth class, under Act No. 215, Pub. Acts 1895. Section 11, chap. 26, of that act, is as follows:

"The council may contract from year to year, or for a period of time not exceeding 10 years, with any person or persons, or with any duly-authorized corporation, for the supplying of such city and the inhabitants thereof with water upon such terms and conditions as may be agreed; and may grant to such person, persons, or corporation the right to the use of the streets, alleys, wharves, and public grounds of such city as shall be necessary to enable such person, persons, or corporation to construct and operate proper works for the supply of water for the use of such city and the inhabitants thereof upon such terms and conditions as shall be specified in such contracts."

The contentions of the respondent are:

1. That section 11, above quoted, if taken without limitations or qualifications, is unconstitutional, in that it allows a municipality to incur liability without any limit.

2. That, if section 11 be limited at all, then the same limitations applying to the other general funds authorized to be raised by cities apply to this fund; that the limitations upon the aggregate of all general funds of the city (and that this is a general fund) are a total of $1\frac{1}{4}$ per cent. upon the assessed valuation, and a further limitation that no liabilities shall be incurred beyond the amounts appropriated to the several general funds.

3. That no provision was made for this indebtedness in the last appropriation bill.

4. That such a liability or a contract, extending over more than one year, could be made only after ratification by a two-thirds vote of the electors of the municipality.

There is a limitation upon the power of the council to raise money, contained in section 5 of chapter 30 of the act, which provides:

"The aggregate amount which the council may raise by general tax upon the taxable real and personal property in the city, for the purpose of defraying the general expenses and liabilities of the corporation, and for all purposes for which the several general funds mentioned in section 3 of this chapter are constituted (exclusive of taxes for schools and school-house purposes), shall not, except as herein otherwise provided, exceed in one year $1\frac{1}{4}$ per cent."

It appears that the assessed valuation of the city of Monroe, in 1896, was $2,469,025; $1\frac{1}{4}$ per cent. thereof is $30,862.81. The total tax levy, exclusive of the taxes for schools and school-houses, under the appropriations made in September, 1896, for the year 1897, was $18,700, in which was included $5,650 for the water fund; and, according to the answer of the respondent filed in the court below, the amount to be appropriated in September, 1897, for the year 1898, will be about $18,000. So that it is seen the council has not exceeded the power conferred by the act, unless, as contended by counsel, in exercising the power to make a contract for a supply of water for a period of more than one year, and not exceeding 10 years, it is necessary for the council to first pass an annual September appropriation ordinance making an appropriation for the water fund, and which appropriation, added to the amount appropriated in the same ordinance for other purposes, except school taxes, must not exceed $1\frac{1}{4}$ per cent. of the assessed valuation of the city for the preceding year. We think there is no force in this last contention, as affecting the question of the power to make this contract. If the council, under the power to make a contract

for a supply of water for a period not exceeding 10 years, has obligated the city to pay a certain amount each year, that amount must be raised annually for the purposes of that fund, and be included in the annual September budget.   There is no showing in the present case that this contract would be an appropriation of money, taken in connection with other necessary appropriations, exceeding the limit which, under the act, the council might raise, and we find no other provisions of the act limiting this power.   Several provisions of the act are referred to by counsel on both sides; but we do not deem it necessary to discuss them, inasmuch as we think they do not limit the power of the common council in respect to the appropriation of this water fund.

But counsel for respondent say that, if this contract be sustained, the common council, acting under this charter, has the power to tie up the revenues of the city for 10 years in the future for the exclusive benefit of one fund, and all the other needs and liabilities of the city are left without the means of payment.     But, as said in *People* v. *Mahaney*, 13 Mich. 498:

"Whether the restriction fixed upon would as effectually guard the citizen against abuse as any other which might have been established was a question for the legislative department of the government, and does not concern us on this inquiry."

Counsel also cite *Niles Waterworks* v. *Mayor, etc., of Niles*, 59 Mich. 311, and *Putnam* v. *City of Grand Rapids*, 58 Mich. 416, as having some bearing upon the question here.   In those cases the city charter contained no provision expressly authorizing contracts for more than one year.

It is also contended that it was not the official duty of the mayor to sign contracts for the city.   By section 1, chap. 7, of the act, the mayor is made the chief executive officer of the city, and it is his duty to see that the ordinances and regulations of the council are enforced.   By section 1, chap. 8, the legislative authority of the city is

vested in the common council, consisting of the mayor, two aldermen elected from each ward, and the city clerk; and by section 2 it is provided: "The mayor shall be president of the council, and preside at the meetings thereof, but shall have no vote therein, except in case of a tie, when he shall have the casting vote." In the capacity either as chief executive of the city, or as president of the council, it is the duty of the mayor to obey the directions of the council in performing the ministerial act of executing a contract on behalf of the city.

The court below was in error in refusing to issue the writ of *mandamus*. That order will be reversed, and the writ must issue as prayed. No costs will be allowed.

The other Justices concurred.