MENOMINEE WATER CO. *v.* CITY OF MENOMINEE.

MUNICIPAL CORPORATIONS — WATER SUPPLY — CHARTER PROVISIONS—CONTRACTUAL LIMITATIONS—REPEAL OF STATUTE.

The waterworks act (1 How. Stat. chap. 84), permitting municipal authorities to contract with companies organized thereunder for a water supply on such terms as they may agree upon, is a substantive and independent enactment, which becomes a part of the charter of a municipality availing itself of its provisions; and a general provision of a local charter subsequently enacted, limiting the taxing power of the municipality, will not work a repeal of the earlier act with respect to such municipality, so as to prevent it from entering into a contract thereunder involving an annual expenditure beyond the limitation prescribed in the later act.

Case made from Menominee; Stone, J. Submitted April 3, 1900. Decided June 5, 1900.

*Assumpsit* by the Menominee Water Company against the city of Menominee for rent of certain fire hydrants.

There was a judgment for defendant, and plaintiff assigns error.    Reversed.

*Brown & Trudell* (*William A. Lynch*, of counsel), for appellant.

*L. D. Eastman* (*George G. Greene*, of counsel), for appellee.

LONG, J.    This action was brought by the plaintiff to recover from the defendant city a balance due for rent of certain public fire hydrants, and for the supplying of water therefrom, from May 1, 1897, to November 1, 1897, in the sum of $1,920.84, and from November 1, 1897, to May 1, 1898, in the sum of $1,925, and interest.    The action is based upon a contract between the city and plaintiff, arising out of certain ordinances of the city and the acceptance thereof by the plaintiff.    The declaration contains a single special count upon the contract.    The plea is the general issue, with notice under it, which, after stating that the assessed valuation of all the taxable real and personal property in the city for the year 1897 was $2,616,706, and for the year 1898 $2,419,629, proceeds to state—

"That, under the limitations of defendant's charter, it is, and for several years last past has been, impossible for said city to levy and raise an annual tax sufficient, with all other revenues of said city, to pay more than $10,000 annually for a water fund or for the supply of water for said city, and at the same time levy and raise taxes sufficient to pay the other current and general expenses of said city, required to be levied and raised to meet its expenses and liabilities."

The notice further states that the sum of $10,000 had been appropriated for water supply for each of said years,—

"And that there is now no money in the treasury of said city, or in any fund thereof, from which it can pay the claim of said plaintiff, or any part of it, or any claim for water or the supply thereof for the years 1897 and

1898; that the defendant city has prescribed by resolution and ordinance the sum of $10,000 as a reasonable and proper water rent or compensation for the supply of water to be furnished to defendant city, and as the most it can raise by taxation or pay under the limitations and duties imposed by its charter."

The facts found by the court, and the admissions of counsel, so far as necessary to the questions here involved, are as follows: The city of Menominee was incorporated by the legislature in 1883. On the 5th day of May, 1884, the council of the city, by its resolution adopted on that day, declared that it was expedient to have constructed works for the purpose of supplying such city and the inhabitants thereof with water, but that it was inexpedient for such city, under the power granted in its charter, to build such works. Thereupon and thereafter, on or about said day, the persons named in the declaration duly organized the plaintiff corporation for the construction of such works, under and pursuant to an act of the legislature entitled "An act to authorize the formation of companies for the introduction of water into towns, cities, and villages in the State of Michigan," approved April 3, 1869 (Act No. 113, Laws 1869), and the acts amendatory thereof and supplementary thereto. By the ordinances of the defendant city approved May 7 and September 9, 1884, set forth in the declaration, and the acceptance thereof by the plaintiff as therein stated, a contract was entered into between the plaintiff and the defendant city for the supplying of said city and the inhabitants thereof with water. Subsequently, by ordinances of the defendant city approved November 26, 1890, and December 15, 1891, set forth in the declaration, and the acceptance thereof by the plaintiff as therein stated, the original contract between the parties was modified, and additional public fire hydrants provided for. Plaintiff constructed its said works in said city in the year 1885, and at all times since the construction thereof has furnished water to said city and its inhabitants as prescribed and required by the terms of

said ordinances, and has duly performed each and every term and condition of each of said ordinances by it thereby to be performed.   At the date of said ordinance approved November 26, 1890, it had 135 public fire hydrants in place and in use by said city upon its water-pipe system, as recited in section 6 of said ordinance, and thereafter, and prior to the 1st day of May, 1897, pursuant to said ordinance, it had, by direction of said defendant, erected 141 additional public fire hydrants, which were located by said defendant, and it then had, and has ever since maintained ready and in good order and condition, 276 public fire hydrants; and on the 1st day of June, 1897, the plaintiff, at the request and under the direction of said defendant city, erected 1 additional fire hydrant, and has ever since maintained the same ready and in good order and condition for immediate use.   The defendant city has used, occupied, possessed, and enjoyed said 276 public fire hydrants ever since the 1st day of May, 1897, and the 1 public fire hydrant thereafter located, to wit, June 1, 1897, ever since said last-mentioned day, and still continues to use, occupy, possess, and enjoy the same.   If the defendant city is bound by said ordinances and any contract or contracts formed by their acceptance, it became indebted to plaintiff November 1, 1897, in the sum of $6,920.84, and May 1, 1898, in the sum of $6,925, as alleged in the declaration.   On February 17, 1898, defendant paid plaintiff $5,000 on account of water supplied by it to defendant between the 1st day of May and the 1st day of November in the year 1897, and on June 20, 1898, the further sum of $5,000 for water supplied by it to defendant from the 1st day of November, 1897, to the 1st day of May, 1898, and has not paid, and refuses to pay, any further sum or sums for water so supplied by plaintiff to defendant during the periods aforesaid.   The city enjoyed the use of the fire hydrants and the water supplied therefrom, and paid therefor according to the contract, without objection, down to June, 1897.   On the 7th

of June, 1897, the council adopted the following resolution:

"*Resolved*, that the city clerk be, and he is hereby, instructed to notify the Menominee Water Company that the city does not consider itself bound by the terms of the ordinance constituting the alleged contract for a supply of water to the city and its inhabitants, and that it can no longer comply therewith, as the rates fixed therein for hydrant rental have become excessive, and the amount required to be raised therefor, with the other necessary running expenses of the city, is in excess of what the city can raise on its taxable property under the charter, and request the water company to meet in conference with the council or its representative, and arrange for such rates as will be just and reasonable, and within the power of the city to pay. Now, therefore, *resolved*, that the city pay the water company no further hydrant rental under its contract, but that it offer to pay the water company for hydrant rental such compensation for the supply of water furnished by the company to the city as it shall deem just and reasonable, and as has been or may be appropriated therefor."

The plaintiff was immediately notified of the passage of the foregoing resolution, and the same resolution appears to have been re-adopted March 7, 1898; and at a meeting of the council September 19, 1898, the report of the committee appointed under this resolution was adopted, of which report the following is a copy:

"Your committee, to whom was referred the water supply, respectfully report that they have had the same under consideration. This committee, together with a special committee, have held several meetings with the Menominee Water Company, and have agreed with Mr. Lynch, president of the water company, that this council would appropriate $10,000 for payment of hydrant rental; $5,000 to be paid to the Menominee Water Company at the first meeting of the council in May and November, to be received by the Menominee Water Company without prejudice to either party; the Menominee Water Company to bring a friendly suit to test the validity of its contract; each party to pay its own costs."

The value of all the taxable real and personal property

in the defendant city in the years 1897 and 1898, as shown
by the assessment thereof for said years, was as follows:
1897, $2,616,706; 1898, $2,419,629.   This was only 40 per
cent. of its true cash value, as found by the court in the
ninth finding of fact.   For nine years, commencing with
the year 1890, the taxable property in the city of Menom-
inee was assessed at 40 per cent. of its true cash value.
On these valuations the council ordered a tax of 1 per cent.
to be levied, as follows: 1897, $26,167.06; 1898, $24,196.29.
This tax was ordered pursuant to section 5 of chapter 26 of
the charter, and reached the limit of 1 per cent. provided
for in that section.   The third and eighth findings of fact
are as follows:

" (3) That prior to said ordinance passed May 7, 1884,
there had been no appropriation made or tax levied by the
council of said city, or otherwise, for a water fund, or for
providing or paying for any supply of water, or for any
expense or liability for the supply of water, pursuant to
said ordinance, or otherwise; that prior to said ordinance
approved November 26, 1890, there was an appropriation of
$12,000, and no more or other, for the fiscal year in which
said ordinance was passed, for a water fund, and for the
expense and liability for the supply of water, pursuant to
said ordinance."

"(8) That no proposition to make any appropriation or
to use or raise any sum or sums to pay the hydrant rental
or price for water payable by either of the ordinances and
water contracts mentioned in the declaration, or any part
thereof, or to approve or sanction said ordinances and con-
tracts, or either or any of them, was ever submitted to or
voted upon by the electors of said city; nor was any
amount ever authorized to be raised by tax or loan or
otherwise for such payment, or for the payment of any
water supply, by any vote of the electors of said city, pur-
suant to sections 14, 20, or 21 of chapter 26 of the charter
of said city, enacted in 1883, or otherwise."

The population of the city of Menominee in the years
named was as follows: 1889, 5,557; 1890, 10,630; 1894,
12,532.

The court found certain conclusions of law, which were
severally excepted to, and error was assigned thereon.

The tenth, eleventh, and twelfth assignments of error are as follows:

"10. The court erred in rendering judgment in favor of the defendant and against the plaintiff in this cause, for the reason that the facts found by said court do not support said judgment, and, further, because, upon the facts found by said court, the plaintiff was, as a matter of law, entitled to judgment in its favor.

"11. The court erred in not rendering judgment for the plaintiff, because, upon the facts found by the court, the plaintiff was, as a matter of law, entitled to judgment in its favor.

"12. The finding of the facts by the court does not support said judgment."

The court made no finding of law upon the affirmative defense set up in the notice under the plea hereinbefore mentioned.

It is the claim of the plaintiff (1) that by the ordinances of the defendant city, and their acceptance by the plaintiff company, a contract resulted; (2) that, if this is not true, then the ordinances constitute a continuing offer of compensation for the prescribed service under section 15, chap. 84, 1 How. Stat., known as the "Waterworks Act," so long as the ordinances remain in force.

The waterworks act makes alternative provisions for the supply of water. Section 12 provides:

"It shall and may be lawful for the municipal authorities of any city, village, or town in which any company is or shall be formed for the purpose of supplying such city, village, or town, and the inhabitants thereof, with water, to contract and agree with such company for the supply of water for public, municipal, or other purposes, and for the time and mode of payment, and may issue their obligations therefor."

Section 15 provides:

"Whenever any such company shall have been duly organized, it shall be the duty of the common council of any such city or village, or the proper authorities of any such town, by ordinance, to grant to such company such right to the use of the streets, alleys, wharves (if any),

and public grounds of said city, village, or town as shall be necessary to enable such company to construct the proper works for the supply of water for the use of such city, village, or town, and its inhabitants; and the said common council may, in such ordinance, prescribe such just and reasonable terms, restrictions, and limitations upon such company in reference to the manner of using streets, alleys, wharves, and public grounds, to the charging and collecting of tolls, water rents, or other compensation for the supply of water to be furnished by such company to such city, town, or village, and its inhabitants, as it may deem proper to guard against the improper use of such streets, alleys, wharves, and public grounds, and to protect said city, town, or village, and its inhabitants, from the imposition of undue or excessive rates or charges for the supply of water; but no such restriction shall be imposed which will prevent such company realizing upon its capital stock an annual income or dividend of ten per cent., after paying the cost of all necessary repairs and expenses, interest on all moneys borrowed, and five per cent. per annum into sinking funds for the extinguishment of funded debts.''

It is contended by counsel for the city: (1) That the city had no power to make the contract sued upon, for the reasons (*a*) that the city charter prohibits it; (*b*) that the contract is not saved from the prohibition by chapter 84, 1 How. Stat.   (2) That there can be no recovery without the contract.   It is also contended by the city that there is a conflict between the waterworks act and the charter, and that, the charter being the later expression of the legislative will, it must prevail.   On the other hand, it is claimed by counsel for plaintiff that the act, *ex proprio vigore*, does not affect any city in the State; that it is permissive, and not obligatory; that it becomes effective in such cities, and in such cities only, as shall choose to avail themselves of its provisions; and that, therefore, within the contemplation of the legislature, the act was to have the same application to cities thereafter organized as to cities existing at the date of its passage.

It is admitted by plaintiff's counsel that, under the provisions of section 15 of chapter 26 of the original charter

(Act No. 228, Local Acts 1883), a contract could be made only for a period not exceeding one year, and only in pursuance of a prior appropriation. It is said, however, that the city was embarrassed by that restriction, and in this emergency the legislature, speaking to it in the waterworks act, said:

"If you deem it expedient to have waterworks constructed, but inexpedient to build such works under the power granted you by the charter, then you may avail yourself of the provisions of this act. You are not bound to do it. The act does not touch you or affect you unless you so elect. But, if you would enlarge your power so that you may contract for a supply of water from the one year prescribed by your charter to any number of years less than thirty, you are privileged to do so."

But the court below was of the opinion, and so stated:

"That chapter 84, 1 How. Stat., enacted in 1869, and the provisions of the charter of Menominee, enacted in 1883, are *in pari materia*, and cover the same subject-matter; that a subsequent legislative act repeals all prior acts repugnant to it; that the last expression of the legislative will must be carried into effect as the law of the land. * * * Here the later law is the local, special act, and the prior law a general one. * * * Chapter 84 relates to all the cities of the State, as they existed at the time of its enactment. Defendant's charter relates to the defendant city, and was enacted 14 years later than said chapter 84."

The court therefore held that chapter 84 did not save the contract from the charter prohibition.

Counsel for plaintiff contend, however, that the court below was in error in its conclusion. It is their contention that it is inaccurate to say that the prior law is a general one, in the sense in which that phrase is commonly applied to ordinary legislation, operating by force of its own terms throughout the State or a limited district of the State; that the act comes into being, and thereupon becomes local and special, as to every city which avails itself of its provisions; that it speaks from the date of its adoption; that the charter deals with the ordinary conduct of the affairs of

the city; that the waterworks act deals solely with the subject of waterworks and a water supply, and that therefore these special provisions in regard to this particular subject should prevail over the general provisions of the charter; that this view of the subject is consistent with, and leaves untouched, section 5, chap. 26, of the charter, which reads as follows:

"The aggregate amount which the council may raise by general tax upon the taxable real and personal property in the city for the purpose of defraying the general expenses and liabilities of the corporation, and for all purposes for which the several general funds mentioned in section three of this chapter are constituted, exclusive of taxes for school and school-house purposes, shall not, except as herein otherwise provided, exceed in any one year one per cent."

We think the court below was in error in its conclusions. The Constitution of this State, by section 13, art. 15, provides for the organization of cities and villages, and provides that the legislature shall restrict their powers of taxation, borrowing money, contracting debts, and loaning credit. Subject to such general restrictions, the powers to be granted cities are left to the discretion of the legislature. The discretion of the legislature may as well be exercised in an independent statute as in the charter itself, and it was properly exercised in relation to the subject of this contract under the waterworks act. The waterworks act is a substantive and independent enactment. The city having availed itself of its provisions, the act stands a part of its charter, as a separate chapter dealing with the specific subject of a water supply. When so read, the case comes directly within the principles laid down in *Monroe Water Co.* v. *Heath*, 115 Mich. 277 (73 N. W. 234). The court below, however, was of the opinion that the contract was invalid under the rules laid down in *Putnam* v. *City of Grand Rapids*, 58 Mich. 416 (25 N. W. 330); *Niles Waterworks* v. *City of Niles*, 59 Mich. 311 (26 N. W. 525); *Ludington Water-Supply Co.* v. *City*

*of Ludington,* 119 Mich. 480 (78 N. W. 558). The case of *Putnam* v. *City of Grand Rapids,* however, turned upon the construction of the charter of that city. In *Niles Waterworks* v. *City of Niles* it appeared clearly that the contract was under the charter. It was treated so, and there was no claim in the case that any reliance was placed upon the waterworks act as giving the contract validity. In *Ludington Water-Supply Co.* v. *City of Ludington* this court found authority in the charter to sustain the contract, and the question here raised was not presented.

The judgment below must be reversed, and a judgment entered here in favor of the plaintiff for the amount of its demand, with interest.

The other Justices concurred.