ATTORNEY GENERAL, *ex rel.* GRAVES, *v.* MAYOR AND COMMON COUNCIL OF THE CITY OF ADRIAN.

1. ELECTIONS—MUNICIPAL CORPORATIONS—CITIES — CHARTER REVISION.

Although the highest number of votes cast at a municipal election was 2,749, and the question of charter revision, under Act No. 279, Pub. Acts 1909, received only 1,246 votes in its favor and 1,049 votes against, a majority of the votes cast on the question of revision was sufficient to carry the proposition.

2. MUNICIPAL CORPORATIONS—APPROPRIATION—BUDGET—STATUTES —REVISION OF CHARTER.

In cities which have elected to revise their charters under the statute, it is the duty of the common council to provide, by an appropriation, for the expenses of the charter commission; the provisions of section 19 of said act being mandatory.

3. SAME—SPECIAL ACTS—ADRIAN CHARTER.

Since it is provided by general law that the council of such city shall appropriate sufficient funds for the expenses of the charter commission, inconsistent provisions of the charter of the city of Adrian, prohibiting further appropriations after the passage of the annual appropriation bill, must yield to the statutory requirement.

4. SAME—MANDAMUS—COMMON COUNCIL.

And mandamus will issue to compel the city council to make such necessary appropriation, after the time fixed by charter for making the appropriation has passed.

5. SAME—DISCRETIONARY ACTION.

The common council will not be required to adopt a particular resolution, which may not meet with its approval.

Certiorari to Lenawee; O'Mealey, J.   Submitted October 10, 1910.   (Calendar No. 24,165.)   Decided December 30, 1910.

Mandamus by John E. Bird, attorney general, on the relation of Benjamin F. Graves, against the mayor and

common council of the city of Adrian, to require the appropriation of necessary expenses for a charter commission. A denial of the writ is reviewed by relator on certiorari. Reversed.

*Smith, Baldwin & Alexander,* for appellant.

*James H. Baker,* City Attorney, for respondents.

HOOKER, J. Act No. 279 of the Public Acts of 1909, entitled, "An act to provide for the incorporation of cities," etc., contains provisions intended to authorize and prescribe a method whereby charters of cities may be adopted, revised, and amended without further action by the legislature. Revision of its existing charter was attempted by the city of Adrian, and this proceeding by way of mandamus was commenced in the circuit court to compel the mayor and common council to take some of the statutory steps which they had declined to do. The writ having been denied, the cause has been brought to this court by certiorari.

Section 18 of the act provides that—

"When the legislative body shall * * * declare for a general revision of the charter, * * * (and) an initiatory petition shall be presented therefor * * * the question * * * shall be submitted to the electors for adoption or rejection * * * (and) in case the electors shall, by a majority vote, declare in favor of such revision a charter commission shall be selected. * * *"

Section 19 is as follows:

"SEC. 19. The legislative body of the municipality, unless it is otherwise provided, shall fix in advance of the election of a charter commission the place of its meeting, the compensation of its members, the money for the expense thereof, and, if need be, provide the ballots for election."

The question of a general revision was submitted at the annual election held April 4, 1910, and received 1,246 votes in favor of revision and 1,049 against it, a majority

of 197 of the vote cast upon the proposition, and was so declared upon canvass by the council on April 7, 1910. The highest number of votes cast at such election for any office was 2,749.

The relator's petition shows that at a regular session of the council he (being an alderman) offered the following resolution:

By Alderman Graves:

"Whereas, at the annual election, held in the city on the 4th day of April last past, a resolution of this council submitting to the electors of this city the question of, 'Shall there be a general revision of the charter of this city,' and a vote of the electors having been had thereon at said election, and the same having been carried by a majority of 197, there being 1,246 votes in favor of it, and 1,049 votes against it. Therefore, desiring to carry out the express will of the people of the city, be it resolved, That a special election for this city and the several wards thereof be and the same is hereby called to be held on the first Tuesday succeeding the first Monday in November next, at which time a charter commission shall be elected consisting of three members from the city at large and one member from each of the respective wards, making a total of nine members when elected, shall constitute a charter commission for revising the charter of this city. The qualifications of the members of said charter commission shall be that he is an elector, having a residence of at least three years in this city, and no city officer whether elective or appointive shall be eligible to a place on said commission. The names of all candidates who have been duly nominated as hereinafter provided shall be placed upon a separate ballot at the election designated to be held for the election of a charter commission and without their party affiliations being designated; the candidate having the greatest number of votes in each ward shall be declared elected and the three candidates at large having the greatest number of votes cast in this city at said election shall be declared elected. The nomination and election of the members of such commission, except as herein specified, shall be conducted as near as may be as now provided by law for the nomination and election of city and ward officers in this city. And that the city clerk be and he is hereby instructed to give the proper notice of such

election and prepare the necessary number of ballots. The said charter commission when elected shall meet and organize on the second Tuesday after this election at the council room in the city hall of this city, and the members thereof shall each receive the sum of one dollar as their full compensation for their services while revising said charter. To defray the expenses of said charter commission, the sum of $200, deposited with the city treasurer, shall be used to cover all expenses of said charter commission up to the time of its final adjournment. Said charter commission when convened shall immediately proceed to revise the city charter of this city and fix the time when said revised charter shall be submitted to the electors of this city. The common council of this city shall convene on Thursday next succeeding such special election at its usual place of meeting and canvass the vote and determine who have been elected as members of the charter revision commission."

And that the same was voted upon and was lost by a vote of seven to six, the deciding vote being the mayor's.

The petition prays a mandamus requiring the mayor and common council to meet, vote upon, and adopt said resolution, at the next regular meeting of the council.

The respondents by answer (1) deny that the measure was carried at the election; (2) admit that prior to offering the resolution relator paid to the city treasurer the sum of $200 to defray the expenses of said charter commission, while it should be in session, etc., which was known to the aldermen at the time of their vote upon said resolution; (3) allege that $200 would be inadequate to cover said expenses, etc., and allege that no estimate of expenses, etc., had been made, as required by sections 270 and 274 of the existing charter, and no fund was available, as provided by sections 272 and 274 of said charter.

We are of the opinion that a majority of the votes cast for and against revision was sufficient to carry the proposition submitted. The case of *Shearer* v. *Bay County Supervisors*, 128 Mich. 552 (87 N. W. 789), is controlling in this cause.

We are also of the opinion that the council had author-

ity to appropriate money for the purposes of section 19, Act No. 279, Pub. Acts 1909. There was ample time to arrange for its inclusion in the September appropriation, and no good reason is shown why it was not done, except that, acting upon the advice of the city attorney, they omitted it from the budget which it was their duty to provide in September.

Counsel for respondents contend that the existing charter forbids an appropriation at this time—citing section 274:

"SEC. 274. After the passage of the annual appropriation bill, no further sums shall be used, raised or appropriated; nor shall any further liability be incurred for any purpose, to be paid from any general fund or street district fund, during the fiscal year for which the appropriation was made, unless the proposition to make the appropriation shall be sanctioned by a majority of the electors voting upon the proposition at the next annual city election, or at a special election called for that purpose. But this section shall not prohibit the council from making any necessary repairs or expenditure at a cost not exceeding ten thousand dollars, the necessity for which is caused by casualty or accident, happening after making the annual appropriation of the year, and from loaning money therefor."

The act of 1909 is mandatory, and had the vote for revision occurred after the annual appropriation required to be made in September, it would have been the duty of the council, nevertheless, to comply with the provisions of section 19. That section is a general law made applicable to cities, and so far as prior charter provisions are inconsistent with it, they must yield. *Monroe Water Co.* v. *Heath*, 115 Mich. 277 (73 N. W. 234); *Menominee Water Co.* v. *City of Menominee*, 124 Mich. 386 (83 N. W. 127).

In this case they did not conflict, and the council should have taken steps to make the necessary appropriation, and this they cannot avoid by omitting it, until after the time fixed by the charter for making the appropriations for the year is past. We have frequently required boards

and public officers to act after the time limited for their action had expired, where through contumacy or a mistaken sense of duty, they had refused or omitted to perform statutory duties.

It is contended that section 19 gives the council a discretion as to fixing the date for the election of commissioners, the amount of their compensation, and the total expenses of the commission. That is doubtless true, within reasonable limits, but in this case there was a refusal to take the action required by law, as appears by the pleading.

So far as the prayer that the council be commanded to adopt relator's resolution is concerned, it must be denied, for it may not meet the approval of the council, but a writ should issue requiring the council to proceed, at its next regular meeting, in compliance with said section 19. Presumably the course taken by the aldermen was in good faith, and the writ will issue without costs. No constitutional question is raised in this case.

OSTRANDER, BROOKE, BLAIR, and STONE, JJ., concurred.